# CHARLESTON.

C. W. HENDERSON *v.* CITY OF BLUEFIELD *et als.*

(No. 5249.)

Submitted January 14, 1925.     Decided March 31, 1925.

CARRIERS—*Municipal Ordinance, Regulating Taxicabs and Solicitation of Passengers, Held Valid as Reasonable Exercise of Police Power and Charter Authority.*

A municipal ordinance making it unlawful for drivers or proprietors of taxicabs, motor busses and jitneys to solicit passengers for hire on the streets of the municipality, to stand or park the same in the city closer than one hundred feet of any railroad passenger station or the terminus of any

interurban street railway car line, or to leave such vehicles during the time they are being used in the public service, and providing penalties therefor, should be upheld as having been enacted in the reasonable exercise of the police power of the municipality, and its charter authority to pass ordinances for the regulation of automobiles and other vehicles within the municipality promotive of the interest or convenience of the inhabitants thereof.

(Carriers 10 C. J. § 1069.)

(NOTE :—Parenthetical references by Editors. C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Mercer County.

Suit by C. W. Henderson against the City of Bluefield and others for injunction. From a decree overruling defendant's motion to dissolve injunction, defendants appeal.

*Reversed.*

*Russell S. Ritz* and *Sanders, Crockett, Fox and Sanders,* for appellants.

LITZ, JUDGE :

The City of Bluefield, acting under its police power, and its charter authority to pass ordinances for the regulation of automobiles and other vehicles within the municipality promotive of the interest or convenience of the inhabitants thereof, on the 13th day of May, 1924, enacted an ordinance making it unlawful: (1) for any person, firm or corporation operating taxicabs, motor busses or jitneys in and out of the city to solicit on the streets thereof passengers for hire; and (2) for any person, firm or corporation owning or operating taxicabs, motor busses or jitneys to stand or park the same in the city closer than one hundred feet of any railroad passenger station or the terminus of any interurban street railway car line. The ordinance provides further : "Operators of taxicabs, motor busses, or jitneys, during the time they are using the same in public service, shall not leave the same but remain in charge thereof. Any person, firm or corporation violating any of the provisions of this ordinance shall, upon conviction in the police court of this city, for the first offense

be fined not less than Ten Dollars ($10.00), nor more than Twenty-five Dollars ($25.00) ; and for conviction of the second offense, be fined not less than Fifty Dollars ($50.00), nor more than One Hundred Dollars ($100.00), and in addition thereto may, in the discretion of the police judge, be imprisoned in the city jail not to exceed thirty (30) days.''

On June 8, 1924, the plaintiff was arrested, and tried and convicted before the police court of the City of Bluefield, on a warrant issued by the judge thereof charging that the plaintiff had solicited on the streets of said city persons to take passage for hire in a certain taxicab then and there being operated by him, and while using a taxicab in public service in the city had left the same and failed to remain in charge thereof, in violation of said ordinance. Upon the plaintiff's bill, attacking the ordinance as being unjust, unreasonable, oppressive and in violation of the constitution and laws of the State, August 27, 1924, the circuit court awarded an injunction against the defendants, City of Bluefield, a municipal corporation, W. H. Thomas, mayor, W. H. Thomas, C. I. Cheyney, J. D. Kirk, George W. Troutman and Henry Lilly, members of the board of directors, W. C. Easley, police judge, and N. D. Dillow, chief of police, of said city, restraining and enjoining them and each of them from further prosecuting charges against the plaintiff under said warrant or any other charges based upon the alleged violation of said ordinance, except the portion thereof pertaining to the parking of taxicabs, motor busses or jitneys within one hundred feet of any railroad passenger station, or the terminus of any interurban street railway car line in said city. From the action of the circuit court overruling their motion to dissolve the injunction the defendants appeal.

The validity of the ordinance, sole question for solution, depends upon the enactment of the ordinance as being a reasonable exercise of the police power and charter authority of the city. The proper exercise of the police power permits the municipality, independent of any statutory authority conferred upon it, to regulate the use and enjoyment of the streets in the interest of the public health, general welfare and con-

venience of the people. *City of Bluefield* v. *Public Service Commission,* 94 W. Va. 334, 118 S. E. 546.

A charter provision empowering municipal corporations to grant, refuse or revoke license to owners of vehicles kept for hire therein, and to subject them to such regulation as the interest and convenience of the inhabitants thereof, in the opinion of the municipal authorities, may require, delegates to the corporation full legislative power over such vehicles. *Ex parte Dickey,* 76 W. Va. 587.

Sustaining a municipal ordinance authorizing the depot marshal or any police officer to prescribe the places for omnibusses or hacks or other vehicles to stand at a railroad depot while waiting for passengers, and requiring drivers to obey the direction of police officers with reference thereto, in the case of *Beneman* v. *Jones,* (Ind.) 20 N. E. 644, it is said, "Such regulations tend to the convenience of the general public by protecting persons from the annoying solicitations of hackmen and others who, when acting without restraint, often confuse travelers, besides engendering strife and contention among themselves."

An ordinance enacted by the commissioners of the District of Columbia, requiring drivers of public vehicles, while waiting in the streets, to place their vehicles in any location designated by the policemen, and to always be within five feet of the vehicles, was upheld as a valid regulation of traffic in the case of *Barnes* v. *District of Columbia,* 24 App. (D. C.) 458, the court saying: "That regulations of this character are necessary to prevent obstruction of the streets, confusion, disorder and even danger, is obvious. * * * Every regulation concerning the location of vehicles at railway stations and cab stands reposes some discretion in the officers placed at such stations for their enforcement. That this discretion may, in some instances, be arbitrarily exercised and abused, cannot render the ordinance itself unreasonable and unjust, and therefore invalid."

An enactment prohibiting any hackman from permitting his horse or vehicle to stand in any public street of a village, or to walk or drive through the streets soliciting patronage,

was held valid in the case of *People ex rel Van Norder* v. *Sewer, Water and Street Commissioner, etc.,* 86 N. Y. S. 445. In answer to the contention that the law was in conflict with the State constitution as depriving the relator, a hackman, of property without due process of law, the opinion states: "It seems to me a complete answer to this contention is that the relator has no legal right to conduct his business in a public street, except he do so under a lawful license authorizing him so to do. The law in question does not prohibit the relator from engaging in the occupation of a hackman, but simply lays down salutary rules prohibiting his soliciting patronage as such hackman in the public streets." Likewise in the case of *Yellow Taxicab Company* v. *Gaynor,* 143 N. Y. S. 279, a provision of an ordinance regulating the business of public hackman, that no person should solicit passengers for a public hack upon the streets except the driver, while sitting upon the box of his vehicle, was declared to be reasonable as designed to prevent the annoyance of those near hack stands and to prevent drivers from congregating upon the sidewalk in front of hotels and other public buildings."

In modern times the power to regulate public conveyances for hire, such as hacks, taxicabs, motor busses and jitneys, inheres in the legislatures of the several states, but this power may be, and usually is, delegated by the states to the various municipalities within their borders. The municipalities, in pursuance of the authority delegated to them by the states, may, as a valid exercise of the police power, pass ordinances regulating the business of such conveyances. Whether a particular ordinance is reasonable for the purpose for which it is enacted is in the first instance to be determined by the municipal authorities. When they have acted and the ordinance has been passed it is presumptively valid and before a court would be justified in holding it invalid, its unreasonableness must be clearly made apparent. While it is true that municipal ordinances, to be valid, must be reasonable, the presumption is in favor of their validity and it is encumbent upon any one seeking to have them set aside as unreasonable to point out or show affirmatively wherein the unreasonableness con-

sists.   Tested by this rule, we are of opinion that the ordinance in question, as a salutary regulation of traffic in the municipality, is reasonable and valid, serving as it does to protect the public from the annoyance of importunate taxi drivers and to prevent some drivers or proprietors taking advantage of others by the use of unfair methods of the solicitation of patronage, which often results in contention and strife.   Penal in its nature, the ordinance must under the general rule be construed strictly against the municipality, and because of its drastic provisions in order to stand must be given a reasonable interpretation in favor of the public convenience, which it seeks to protect, enabling the drivers or proprietors to assist passengers with their baggage to and from vehicles, and to advise the public by appropriate sign that the conveyances are for hire.

The decree appealed from is reversed and the injunction dissolved.

*Reversed,*