513 S.E.2d 177

**CITY OF CLARKSBURG, A Municipal Corporation, Appellee,**

v.

**GRANDEOTTO, INC., A Corporation; Bernard J. and Kathy A. Folio; Mid–City Land Co.; Bernard J. Folio d/b/a Highrise Associates; Kathryn Folio; Joseph Folio, Appellants.**

**The City of Huntington, A West Virginia Corporation, Appellee,**

v.

**Most Reverend Bernard W. Schmitt, Bishop of the Roman Catholic Diocese of Wheeling–Charleston, Appellant.**

**Wheeling College, Inc., A West Virginia Corporation, and the Most Reverend Bernard W. Schmitt, Bishop of the Diocese of Wheeling–Charleston, Appellants,**

v.

**The City of Wheeling, A Municipal Corporation, Appellee.**

**The City of Wheeling, A Municipal Corporation, Appellee,**

v.

**The Ohio County Board of Education, Appellant.**

Nos. 25143, 25401, 25402.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 10, 1998.

Decided Dec. 15, 1998.

Gregory A. Morgan, Esq., Young, Morgan & Cann, Clarksburg, West Virginia, Attorney for City of Clarksburg.

J. Cecil Jarvis, Esq., McNeer, Highland, McMunn & Varner, Clarksburg, West Virginia and Thomas G. Eddy, Esq., Eddy & Osterman, Pittsburgh, Pennsylvania, Attorneys for Grandeotto, Inc., et al.

Jendonnae L. Houdyschell, Esq., City Attorney, Huntington, West Virginia, Attorney for The City of Huntington.

G. Nicholas Casey, Jr., Esq., Webster J. Arceneaux, III, Esq., Sandra K. Henson, Esq., Lewis, Friedberg, Glasser, Casey &

Rollins, Charleston, West Virginia and Clifford B. Levine, Esq., Peter K. Blume, Esq., Stuart C. Gaul, Jr., Esq., Cathy M. Armstrong. Esq., Thorp, Reed & Armstrong, Pittsburgh, Pennsylvania, Attorneys for Bishop Schmitt.

John Preston Bailey, Esq., Harry L. Buch, Esq., Bailey, Riley, Buch & Harman, Wheeling, West Virginia and James C. Gardill, Esq., Phillips, Gardill, Kaiser & Altmeyer, Wheeling, West Virginia, Attorneys for Wheeling College.

Ronald M. Musser, Esq., Rosemary J. Humway–Warmuth, Esq., City of Wheeling Legal Department, Wheeling, West Virginia, Attorneys for The City of Wheeling.

James F. Companion, Esq., Schrader, Byrd & Companion, Wheeling, West Virginia, Attorney for the Ohio County Board of Education.

Ronald M. Musser, Esq., Rosemary J. Humway–Warmuth, Esq., City of Wheeling, Jendonnae Houdyschell, Esq., City of Huntington, Steve Fanok, Esq., City of Morgantown, Joe DiBartolomeo, Esq., City of Weirton, Mark Matkovich, Esq., City of Beckley, Jill Jerabeck, Esq., City of Charleston, John Feuchtenberger, Esq., City of Bluefield, Amy Haynie, Esq., City of South Charleston, for amici brief.

James W. Withrow, Esq., West Virginia Municipal League, Inc., for amicus brief.

PER CURIAM:

The three cases before us were consolidated for argument and opinion. In the first case, Grandeotto, Inc., Kathy A. Folio, Mid–City Land Co., Bernard J. Folio, d/b/a Highrise Associates, Kathryn V. Folio, and Joseph A. Folio (the Grandeottos) appeal the July 24, 1997 order of the Circuit Court of Harrison County, West Virginia, which granted summary judgment to the City of Clarksburg and ordered the Grandeottos to pay the fire service protection fee. In the second case, Bernard W. Schmitt, Bishop of the Roman Catholic Diocese of Wheeling–Charleston (the Bishop or Diocese), appeals the June 12, 1998 order of the Circuit Court of Cabell County, West Virginia, which granted summary judgment to the City of Huntington and ordered the Diocese to pay the municipal service fee. In the third case, Wheeling College, Inc. (now Wheeling Jesuit University) and Bishop Schmitt (the University and the Diocese) as well as the Ohio County Board of Education (Board) appeal the August 19, 1998 order of the Circuit Court of Ohio County, West Virginia, which granted partial summary judgment to the City of Wheeling in that the court found the University, Diocese, and Board must pay the fire service fee. Other issues were reserved for further consideration.[1] That order was determined by the court to be a final, appealable order by order entered August 28, 1998.

I.

The first case involves individual landowners who own property within the City of Clarksburg. The City enacted and amended ordinances imposing fire protection and waste collection service fees under the authority of W.Va.Code § 8–13–13 (1971).[2]

1. The court reserved three issues for further consideration and action: the amounts owed by the University, the Diocese, and the Board; whether a binding settlement existed between the City, the University and Diocese; and whether delinquent fire service fees were owed by the Board prior to this Court's decision in *City of Huntington v. Bacon*, 196 W.Va. 457, 473 S.E.2d 743 (1996).

2. W.Va.Code § 8–13–13 (1971) states in relevant part:

Notwithstanding any charter provisions to the contrary, every municipality which furnishes any essential or special municipal service, including, but not limited to, police and fire protection, parking facilities on the streets or otherwise, parks and recreational facilities, street cleaning, street lighting, street maintenance and improvement, sewerage and sewage disposal, and the collection and disposal of garbage, refuse, waste, ashes, trash and any other similar matter, shall have plenary power and authority to provide by ordinance for the installation, continuance, maintenance or improvement of such service, to make reasonable regulations with respect thereto, and to impose by ordinance upon the users of such service reasonable rates, fees and charges to be collected in the manner specified in the ordinance: Provided, That any sewerage and sewage disposal service and any service incident to the collection and disposal of garbage, refuse, waste, ashes, trash and any other similar matter shall be subject to the provisions of chapter twenty-four [§ 24–1–1 et seq.], of this code.

This Code section grants local governments authority to enact ordinances for the imposition of reasonable fees upon the users of municipal services to defray certain municipal operating costs, in this case, the costs of fire protection. Ordinance § 957.11 specifies that a flat fee is charged for fire protection services to owners of residential property; owners of nonresidential unit structures and multiple-family residential structures are assessed according to square footage; nonresidential tenants must pay fifty percent of the amount per square foot that nonresidential owners must pay. The fee generates approximately $750,000 in revenue per year, which is used to defray the costs of operating the Clarksburg Fire Department. The fee comprises approximately forty-two percent of the fire department's budget of $1,809,000.

The individual landowners refused to pay the fire protection fees assessed against their various properties. The City of Clarksburg filed actions in circuit court in an effort to collect the unpaid fire service fees. The actions were consolidated by the court. After extensive discovery, the parties made a series of dispositive motions, which were converted by the court to Rule 56 motions for summary judgment. On July 24, 1997, the court granted the City's motion for summary judgment and denied the landowners' motion for summary judgment. The court determined the amount owed by each landowner and ordered that the fees be paid. It is from this order that the landowners appeal.

## II.

In the second case, the City of Huntington brought an action against the Diocese to collect unpaid municipal service fees on two buildings located within the City. The purpose of the fee is to defray the costs of providing fire and flood protection. Pursuant to W.Va.Code § 8–13–13, the City of Huntington enacted Ordinance § 773 .03 and began charging a municipal service fee in July 1990. The fee is assessed as a flat fee on each lot with an additional amount assessed for each square foot of floor space in each building erected on each lot. The fee generates approximately $4,200,000 in revenue per year, while the cost of providing fire and flood protection is approximately $6,900,000 per year. Therefore, the City must pay an additional amount of approximately $2,700,000 annually to cover the cost of these services.

In conformity with the Fourth Circuit's decision in *United States v. City of Huntington, W.Va.*, 999 F.2d 71 (4th Cir.1993), *cert. denied*, 510 U.S. 1109, 114 S.Ct. 1048, 127 L.Ed.2d 371 (1994),[3] the City does not collect the service fee from the federal government. Nor does the City bill itself for the service fee.

The City attempted to collect unpaid fees from the Bishop or Diocese for the two schools located in the City by filing an action in circuit court in 1997. Both parties moved for summary judgment. On July 21, 1997, the court granted the Bishop partial summary judgment, stating that the April 1992 through June 1994 fee actually constituted a tax which could not be levied against the Bishop. The same order granted partial summary judgment to the City, stating that "the municipal service fee for the period of July 1, 1994 through April 24, 1997 constitutes a fee, not a tax, and can be levied against the Defendant." By order entered June 4, 1998, the court found the Diocese was liable to the City for payment of the service fee. The exact amount owed was determined by order of court entered on June 12, 1998. It is from this order the Diocese appeals.

## III.

The third appeal involves two cases which were consolidated by the circuit court. Pursuant to W.Va.Code § 8–13–13 (1971), the City of Wheeling enacted Ordinance § 793.03, the purpose of which is to defray the costs of providing fire protection services to the City of Wheeling. Owners of residential unit structures are assessed a flat annual fee; owners of nonresidential unit structures are assessed a rate based on the square footage of the building; tenants of nonresi-

---

**3.** *United States v. City of Huntington, W.Va.*, 999 F.2d 71 (4th Cir.1993), *cert. denied*, 510 U.S. 1109, 114 S.Ct. 1048, 127 L.Ed.2d 371 (1994), holds that the City is barred by the Supremacy Clause of the U.S. Constitution from collecting the service fee from the federal government.

dential and residential unit structures are assessed a flat fee; owners or lessees of vehicles are assessed a flat fee per vehicle. The ordinance exempts no one from paying the fire service fee; however, the City does not issue bills to itself for buildings and vehicles titled in the name of the City.

The University and Diocese filed an action against the City seeking a declaration that the fire service fee is actually a tax from which they are exempt pursuant to W.Va. Code § 11–3–9 (1998).[4] The City instituted a collection action against the Board. The Board posited essentially the same defenses to the fire service fee that the University and Diocese raised in their action. The court, therefore, consolidated the two actions. Following discovery, the parties filed cross-motions for summary judgment. The circuit court entered an order on August 19, 1998 finding that "the Defendants are authorized to pay the fire service fee imposed by the City of Wheeling[.]" Having reserved certain issues for later consideration, the court entered an order on August 28, 1998, finding that the prior order of the court "constitutes a final, appealable Order." It is from this order the University, Diocese, and Board appeal.

### IV.

█ On appeal, the various appellants offer various assignments of error. The Grandeottos argue the Clarksburg fee is a tax which violates the Tax Limitation Amendment,[5] due process, and equal protection. The Diocese, University, and the Board argue they do not have to pay because the federal government is immune pursuant to *United States v. City of Huntington, W.Va., supra,* and W.Va.Code § 11–3–9 (1998)[6] exempts them from taxation along with the federal government. All parties request that we revisit our prior decision, *City of Hunt-*

ington v. Bacon, 196 W.Va. 457, 473 S.E.2d 743 (1996). The question we must answer is whether the circuit courts erred in determining the appellants must pay the municipal and fire service fees which were assessed against them.

In *Bacon,* the City of Huntington filed suit against the Bacons, who were owners of buildings located in the City. The Bacons refused to pay the municipal service fee. They maintained the fee was a tax which violated the Tax Limitation Amendment. The circuit court disagreed and concluded the fee was a user fee which was properly imposed pursuant to W.Va.Code § 8–13–13. This Court affirmed the circuit court.

█ The City also brought a declaratory judgment action against the Cabell County Board of Education, seeking to determine whether the fee could be recovered from the Board in light of *United States v. City of Huntington, W.Va., supra.* The question was certified to this Court, where it was determined that county boards of education are authorized to pay municipal service fees.

We note that the federal case, *United States v. City of Huntington, W.Va., supra,* was written prior to this Court's *Bacon* decision. The *Bacon* Court determined that municipal service fees are indeed fees and not taxes. The Bacons and the Board of Education were found to be subject to the fee even though the federal government was not obligated to pay pursuant to the Supremacy Clause, Article VI, Clause 2 of the U.S. Constitution. By way of explanation, this Court stated:

> [W]here a federal entity is involved, the federal courts may determine whether a particular funding mechanism employed by a state or its political subdivision is, in fact, a tax[.]

---

**4.** W.Va.Code § 11–3–9 (1998) states in pertinent part:

(a) All property, real and personal, described in this subsection, and to the extent herein limited, is exempt from taxation:

(1) Property belonging to the United States, other than property permitted by the United States to be taxed under state law;

(5) Property used exclusively for divine worship;

(9) Property belonging to, or held in trust for, colleges, seminaries, academies and free schools, if used for educational, literary or scientific purposes, including books, apparatus, annuities and furniture[.]

**5.** W.Va. Const. art. X, § 1.

**6.** *See supra* note 4.

It follows, therefore, that a state is not bound by a federal court's characterization of a state tax or fee when a federal right is not involved. After all, as we have previously stated, states are free to determine their own fiscal policy as long as the fiscal policy does not violate the Constitution of the United States (citation omitted).

*Bacon* at 464–65, 473 S.E.2d at 750–51. The Fourth Circuit's holding did not apply to the Bacons or the Board of Education. The same is true for the appellants in the case *sub judice.*

■ We reiterate this Court's previous holding which states:

An ordinance which imposes a municipal service fee pursuant to *W.Va.Code,* 8–13–13 [1971] upon the owners of buildings at an annual rate plus a percentage based upon the square footage of space contained in each structure on the lot for the sole purpose of defraying the cost of fire and flood protection services is a user fee rather than a tax and therefore, is not in violation of the Tax Limitation Amendment found in *W.Va. Const.* Art. X, § 1.

Syllabus Point 6, *Bacon, supra.*

■ We also reiterate that:

Pursuant to *W.Va.Code,* 18–5–9 [1933], a county board of education is authorized to pay a municipal service fee imposed by a municipality for fire and flood protection services pursuant to *W.Va.Code,* 8–13–13 [1971] in order to protect the health of its pupils and in order to keep its school grounds and buildings in good order.

Syllabus Point 8, *Bacon, supra.*

The circuit courts did not err in granting summary judgment in favor of the Cities of Clarksburg, Huntington, and Wheeling. Accordingly, we affirm the respective judgments of the Circuit Court of Harrison County, the Circuit Court of Cabell County, and the Circuit Court of Ohio County.

Affirmed.

MAYNARD, Justice, dissenting:

I dissent because I believe the Catholic Church, as well as all churches, and all public and other schools are exempt under W.Va. Code § 11–3–9 (1998) from paying this wolfish tax which is cloaked in the garb of a sheepish fee.[1]

First, I note the great importance of the municipal taxes at issue here. Government performs no more important service than providing its citizens with fire protection. This is a very basic and historical government service, and one that private citizens are unable to undertake for themselves. In order to provide this service, local governments must staff fire departments with trained personnel and provide these personnel with modern firefighting equipment. This requires a lot of money. This money is generated through the levying of taxes on those who reap the benefits of effective fire protection. This is at it should be.

However, Article X, § 1 of the Constitution of West Virginia provides, in part, that "property used for educational, literary, scientific, religious or charitable purposes ... may by law be exempted from taxation." This constitutional authorization is codified by the Legislature in W.Va.Code § 11–3–9 (1998). Specifically, W.Va.Code § 11–3–9 provides, in pertinent part:

(a) All property, real and personal, described in this subsection, and to the extent herein limited, is exempt from taxation:

(1) Property belonging to the United States, other than property permitted by the United States to be taxed under state law;

(5) Property used exclusively for divine worship;

(9) Property belonging to, or held in trust for, colleges, seminaries, academies and free schools, if used for educational, literary or scientific purposes, including books, apparatus, annuities, and furniture[.]

1. I dissent specifically to this Court's decisions in case numbers 25401 and 25402 involving the Roman Catholic Diocese, schools and boards of education. I believe there is no reason the appellants in case number 25143 should not pay the "fee" at issue since, unlike churches and schools, they are not exempted under W.Va .Code § 11–3–9.

This code section derives, at least in part, from the recognition that those enumerated institutions which are supported by the public, either through taxation or private gifts, and that exist for the educational, literary, scientific, religious, or charitable enrichment of society should fulfill their missions absent the burden of taxation. This is altogether fitting and proper. The majority, however, resorts to semantic sophistry in order to avoid the unambiguous language of W.Va. Code § 11–3–9. In short, the majority holds that a tax is not a tax when it is called a fee.

In holding that if a tax is called a "fee" it can be levied against those institutions lawfully exempt from taxation, the Court opens wide the door for unlimited government collection of so-called fees. Government's penchant for taxation depends on its ability to devise increasingly creative and expensive schemes to justify the need for the levying of additional taxes. It will not be long now before legitimate "fees" for fire and flood protection are joined by more questionable "fees" such as recreation fees, clean air fees, pollution fees, beautification fees, road paving fees, garbage fees, cultural event fees, parking fees, sporting event fees, and regatta fees. Anyone doubting that such a proliferation of government "fees" could and will occur need only look at the history of taxation in the United States in the twentieth century to be convinced. Also, while the above-mentioned "fees" may be collected to pay for desirable things, these "fees" should be labeled what they really are: taxes.

"The power to tax involves the power to destroy," noted Chief Justice John Marshall in *McCulloch v. Maryland,* 17 U.S. (4 Wheat) 316, 431, 4 L.Ed. 579 (1819). This is also true of the power to collect "fees." No matter what you call it, the money taken from the Catholic Diocese and the schools involved in this case means that there is less money in the operating budgets of these institutions. This is money that would otherwise be spent on teachers' salaries, new textbooks, equipment, or building improvements. In his oral argument before this Court, the lawyer for the Ohio County Board of Education and Wheeling Jesuit University contended that the board of education will be forced to pay almost one million dollars a year out of the school budget as a result of this "fee." This "fee," therefore, is really a tax paid by the school children in Ohio County to the detriment of their education. Regardless of whether the collection of the money is called a tax or a fee, it has the same effect on the appellants' finances. Shakespeare wrote, "That which we call a rose by any other name would smell as sweet." [2] The Bard's words are equally true regarding the noxious odor of taxes. That which we call a tax by any other name smells just as bad.

In sum, I agree with the United States Court of Appeals, Fourth Circuit in *United States v. City of Huntington, West Virginia* in its assessment that the Huntington user fee "is a thinly disguised tax." 999 F.2d 71, 74. I believe this is true of all the fees involved here. Further, the Court of Appeals held that the federal government is immune from paying these exact same fees. Therefore, I would hold that if the federal government is immune from paying a "fee," the other entities listed in W.Va.Code § 11–3–9 are also. To say otherwise is a clear denial of equal protection to the churches and schools. Sadly, their recourse now must be to the federal courts to set things right. Accordingly, I would find that W.Va.Code § 11–3–9 exempts the Diocese and the schools from paying the "fees" at issue. This is clearly one instance in which the Diocese should not be bound to render unto Caesar. By holding to the contrary, the majority opinion opens the door to additional taxes and an increasing burden on those institutions that are, under our Constitution and by law, exempt from such taxation.

I am authorized to state that Justice McCUSKEY joins in this dissent.

Justice McGRAW did not participate in the decision of this case.

---

**2.** *Romeo and Juliet.* Act II, Sc. 2, Line 43.