624 S.E.2d 716

**Thornton COOPER, Plaintiff Below, Appellant,**

v.

**CITY OF CHARLESTON, Defendant Below, Appellee.**

**No. 32612.**

Supreme Court of Appeals of West Virginia.

Submitted: Nov. 1, 2005.

Filed: Dec. 1, 2005.

Thornton Cooper, Esq., South Charleston, for Pro Se.

Karen Tracy McElhinny, Esq., Shuman, McCuskey & Slicer, PLLC, Charles O. Lorensen, Esq., George & Lorensen, PLLC, Charleston, for Appellee.

Dennis R. Vaughan, Jr., Esq., Vaughan Law Firm, Charles O. Lorensen, Esq., George & Lorensen, PLLC, Charleston, for Amicus Curiae West Virginia Municipal League, Inc.

The Opinion of the Court was delivered PER CURIAM.

Justice BENJAMIN concurs and reserves the right to file a concurring opinion.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on June 28, 2004. In that order, the circuit court upheld an ordinance adopted by the City of Charleston, the appellee and defendant below, which authorized and established a city "user fee" on each individual who works within the corporate limits of the City of Charleston. In this

appeal, Thornton Cooper, the appellant and plaintiff below, contends that the ordinance was not enacted in accordance with West Virginia Code § 8–13–13 (1971). The appellant also asserts that the ordinance improperly imposes an unconstitutional tax in violation of the West Virginia Constitution; was not a reasonable fee as prescribed by the West Virginia Code; and violated numerous other statutory, substantive, and procedural requirements. After reviewing the facts of the case, the issues presented, and the relevant statutory and case law, this Court affirms the decision of the circuit court insofar as it determines that the "user fee" is a fee and not a tax and concludes that the City of Charleston had the authority to enact such a fee. We do, however, reverse the circuit court order to the extent that it upheld the City's failure to properly follow the notice and publication requirements of W.Va.Code § 8–13–13, and direct the circuit court to order the City of Charleston to hold an election wherein City voters shall have the opportunity to ratify or strike down the City's user fee ordinance.

## I.

## FACTS

On September 15, 2003, the Charleston City Council passed an ordinance imposing a $1.00 per calendar week "City Service Fee" (hereinafter "user fee" or "fee") on each individual who works within the corporate limits of the City of Charleston (hereinafter "the City"). The ordinance provides that all revenues generated by the fee "are hereby dedicated to and shall be exclusively utilized for police protection and street maintenance and public works related thereto, and any costs related to the imposition and processing of this fee." Char.Code § 6–214, now recodified at § 2–745. The City enacted the ordinance under W.Va.Code § 8–13–13.

As of January 1, 2004, employers within the corporate limits of the City of Charleston were required to withhold and remit the fee. City officials estimate that this fee will generate $2.5 million per year, while it costs the City a total of $19 million per year to provide police protection and street maintenance.[1]

This ordinance was first introduced during a City Council meeting on August 18, 2003, as Bill 7002. Notices containing the full text of the proposed ordinance were published in a local newspaper on August 28, 2003, and September 4, 2003. These notices provided that the proposed ordinance would be discussed at a Council meeting on September 2, 2003. The proposal was not discussed on September 2, 2003. Instead, it was discussed and adopted during a September 15, 2003, Council meeting. During that September 15, 2003, meeting, Bill 7002 was discussed, changes were made, and substitute Bill 7002 was adopted.

In early 2004, the West Virginia State Auditor and appellant Cooper filed separate lawsuits challenging the validity of the fee and seeking declaratory and injunctive relief. The lawsuits were consolidated and an evidentiary record was stipulated. The appellant, who resides and votes in the City of South Charleston, works for a State agency located in Charleston and is therefore required to pay the $1.00 per week fee. Due to his employment, the appellant spends an average of twenty-five percent of his time in Charleston, but does not own or lease property there.

Soon after the lawsuits were consolidated, the City Council introduced Bill 7070. The substance of Bill 7070 was the same as Bill 7002 which passed in 2003, except Bill 7070 made the fee retroactively effective on January 1, 2004. Notices were published on May 21, 2004, and May 28, 2004, and the fee ordinance was re-passed and re-enacted on June 7, 2004. Both notices included a provision that if thirty percent of the qualified voters of the City opposed the ordinance by signing and filing a petition by June 14, 2004, then the ordinance would not become effective until ratified by an election.

On June 28, 2004, the circuit court entered an order upholding almost all aspects of the ordinance. The court found that: allegations pertaining to improper passage of the 2003 ordinance are now moot in light of the republication and re-passage of the ordinance; the City has authority under W.Va.Code § 8–13–13 to impose this fee upon users of the

---

1. The cities of Huntington and Weirton also have user fee ordinances.

municipal services of police protection and street maintenance; and this is a fee, not a tax, because it is a charge for services rendered. The circuit court did, however, find that portions of the ordinance and supporting regulations which could cause the State to become liable for the debts of its employees to be unconstitutional, but did not invalidate the remainder of the ordinance.

This Court refused the appellant's motions for stay pending appeal and this appeal followed. At present, the City of Charleston continues to collect and spend the user fee money. The State Auditor did not appeal the circuit court's decision.[2]

## II.

## STANDARD OF REVIEW

■ The appellant contends that the circuit court erred in upholding the user fee adopted by the City of Charleston. In Syllabus Point 1 of *State v. Paynter*, 206 W.Va. 521, 526 S.E.2d 43 (1999), we held, " 'Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." We have further indicated that a circuit court's final order and ultimate disposition are reviewed under the abuse of discretion standard. *State ex rel. Hechler v. Christian Action Network*, 201 W.Va. 71, 491 S.E.2d 618 (1997).

## III.

## DISCUSSION

### A. City of Charleston Service Fee is a User Fee.

■ As noted above, appellant Cooper argues that the City of Charleston has enacted a tax in violation of the West Virginia Constitution. The appellant states that the City's ordinance is void because it imposes an unlawful municipal capitation tax, because it imposes an unlawful municipal income tax, and because it violates the statutory cap on the municipal business and occupation (B & O) tax.

The appellant states that between 1933 and 1971, a State capitation tax was imposed, while between 1937 and 1971, a municipal capitation tax was imposed in West Virginia. However, in 1970, State legislators decided to abolish all capitation taxes (also known as "head taxes" and "poll taxes") in West Virginia. Then, on November 3, 1970, the voters of West Virginia, by a vote of 253,638 to 117,660, overwhelmingly ratified a constitutional amendment that repealed Article X § 2, of the West Virginia Constitution which provided for the capitation tax. The appellant believes that the City's user fee is a capitation tax and thus unconstitutional. The City, however, maintains that the user fee it enacted is a fee and not a tax.

We have addressed the issue of what separates a permissible "fee" from an impermissible "tax" on several occasions and have found fees similar to the one at issue in this case to be permissible under our Constitution. *See, e.g., Dean v. Town of Addison*, 207 W.Va. 538, 534 S.E.2d 403 (2000) (ordinance imposing a fee to collect a fire service fee from its residents and pay that fee to a local volunteer fire department, even though that volunteer fire department also furnishes fire protection to non-residents; was a permissible fee reasonably reflecting the cost of protecting the municipality from fire); *City of Huntington v. Bacon*, 196 W.Va. 457, 473 S.E.2d 743 (1996) (ordinance imposing fee for the sole purpose of defraying the cost of fire and flood protection services is a user fee rather than a tax and, therefore, is not in violation of the Tax Limitation Amendment found in W. Va. Const. Art. X § 1); *City of Princeton v. Stamper*, 195 W.Va. 685, 466 S.E.2d 536 (1995) (ordinance imposing fee on the collection and removal of residential refuse regardless of actual use is a reasonable and valid exercise of the police powers granted to the City of Princeton under W.Va.Code § 8–13–13 (1971)); *Ellison v. City of Parkersburg*, 168 W.Va. 468, 284 S.E.2d 903 (1981) (ordinance imposing fee for solid waste collection and disposal service per residential unit does not exceed the grant of authority

2. We wish to acknowledge the contribution of the West Virginia Municipal League, Inc., which

filed an amicus curiae brief in support of the City of Charleston.

given to municipalities by W.Va.Code § 8–13–13 (1971)).

■ We have held that, "[t]he primary purpose of a tax is to obtain revenue for the government, while the primary purpose of a fee is to cover the expense of providing a service or of regulation and supervision of certain activities." *City of Huntington v. Bacon*, 196 W.Va. 457, 467, 473 S.E.2d 743, 753 (1996) (Citation omitted.). In *Bacon*, we also said that, "this Court has generally operated on the premise that charges for services rendered by a municipality are user fees and not taxes." *Id.* We have further held that, "[t]he character of a tax is determined not by its label but by analyzing its operation and effect." Syllabus Point 2, *City of Fairmont v. Pitrolo Pontiac–Cadillac*, 172 W.Va. 505, 308 S.E.2d 527 (1983). *See City of Charleston v. Board of Education*, 158 W.Va. 141, 145, 209 S.E.2d 55, 57 (1974) (the charge for fire protection is a fee and not a tax); *City of Moundsville v. Steele*, 152 W.Va. 465, 164 S.E.2d 430 (1968) (charge of $0.25 per front foot for street improvement is a fee and not a tax); and *Duling Bros. Co. v. City of Huntington*, 120 W.Va. 85, 89–90, 196 S.E. 552, 554–55 (1938) (charges for a flood control program are not subject to ordinary taxing regulations).

The City declares that the proceeds of the user fee are used to pay a portion of the expenses of providing police protection and street maintenance and do not go into the general revenue fund. The City also maintains that the user fee is paid by users of the City services and is not a capitation tax. We find the City's argument reasonable and persuasive.

In this case, all of the proceeds from the user fee are used to pay a portion of the expenses of providing police protection and street repairs and maintenance services to individuals who work in Charleston, enjoy police protection and use city streets and roads, and therefore the proceeds fall within the definition of a user fee and not a capitation tax, municipal income tax, or a B & O Tax. The capitation tax discussed by the appellant was imposed upon all male residents of the State who had attained the age of twenty-one years of age and was collected to support the public schools. There are clear differences between the capitation tax of years past and the current user fee enacted by the City. While the capitation tax was collected to support the public schools from people who were no longer using those schools, the user fee in question in the City of Charleston is imposed upon individuals based upon their usage of City services. The user fee is not based upon the fact such users are male, live in the State, and have reached the age of twenty-one. We believe the differences between the capitation tax and the user fee are clear and unambiguous.

The appellant further argues that the ordinance should be declared null and void because it provides that the revenues be used for "police protection and street maintenance and public works related thereto. . . ." He points out that this Court held in *Huntington v. Bacon, supra,* that the "operation and effect of using the proceeds to improve streets and municipal infrastructure makes the municipal service fee a tax." Conversely, the City maintains that the circuit court correctly upheld the ordinance because the fee does not fund anything other than police protection services and street maintenance as specifically provided by the ordinance, and therefore is an entirely appropriate municipal fee. The City also states that the appellant takes the quote from *Bacon* out of context because the fee charged in that situation was enacted for fire and flood protection *only* and not street maintenance and therefore any use of such money otherwise was inappropriate.

We have reviewed the City ordinance in question and the plain language of the ordinance demonstrates that the fee will be exclusively used to provide police services and street maintenance related thereto. There is no allegation before this Court that the City's fee is being used in any manner other than that specified by the enacted ordinance. Since the money collected in this case has been used specifically for the purposes prescribed by the City ordinance and not in violation of the State Constitution or State statutes, we find no error in the circuit court's finding on this issue.

**B. The City of Charleston User Fee Reasonably Serves its purpose.**

■ Having established the service charge in this case to be a fee, we must now

determine whether the City has properly used the authority granted to it by the legislature in W.Va.Code § 8–13–13 (1971).[3] In Syllabus Point 3 of *Huntington v. Bacon, supra,* we explained that, " ' "[m]unicipalities have no inherent power with regard to the exercise of the functions of their government. Such power depends solely upon grants of power by Acts of Legislature, and the Legislature may at any time modify, change or withdraw any power so granted by general law in conformance with the provisions of the Constitution, Article VI, Section 39(a)." Point 2, Syllabus, *State ex rel. Alexander v. The County Court of Kanawha County, et al.,* 147 W.Va. 693[, 130 S.E.2d 200 (1963)].' Syl. pt. 1, *State ex rel. Plymale v. City of Huntington,* 147 W.Va. 728, 131 S.E.2d 160 (1963)." We have also stated that,

> [t]he standard of review of an ordinance exercising such power as that granted by W.Va.Code, 8–13–13 (1971) is the reasonableness of the ordinance. *See Harvey v. Elkins,* 65 W.Va. 305, 64 S.E. 247 (1909). The determination of whether an ordinance reasonably serves the purpose for which it was enacted is initially made by the municipal authorities. Their passage of the ordinance gives it a presumptive validity and a court should not hold the ordinance to be invalid unless it is clear that the ordinance is unreasonable.

*Henderson v. Bluefield,* 98 W.Va. 640, 127 S.E. 492 (1925).

*Ellison v. City of Parkersburg,* 168 W.Va. 468, 472, 284 S.E.2d 903, 906 (1981).

The appellant argues that W.Va.Code § 8–13–13 refers to "reasonable" regulations upon "users" and the imposition of "reasonable" rates. The appellant states that this Court has on eight occasions upheld the imposition by a municipality, of involuntary "fees" upon individuals and other legal entities that reside within, or own or lease real estate within the corporate limits of that municipality, as "users" of the services provided by that municipality.[4] He contends that the common thread which ties all eight of those decisions together is W.Va.Code § 8–13–13 authorizing a municipality to impose reasonable fees upon the owners or lessees of houses, stores, places of worship, school buildings, and other buildings on improved real estate located within the corporate limits of that municipality. In the present case, however, the appellant states that none of those cases ·dealt with individuals who neither reside within, nor own or lease real estate within, the corporate limits of the city imposing the tax.

The City maintains that W.Va.Code § 8–13–13 gives municipalities the "plenary power and authority to provide by ordinance for the installation, continuance, maintenance or

---

**3.** W.Va.Code § 8–13–13, in part, provides,

> Notwithstanding any charter provisions to the contrary, every municipality which furnishes any essential or special municipal service, including, but not limited to, police and fire protection, parking facilities on the streets or otherwise, parks and recreational facilities, street cleaning, street lighting, street maintenance and improvement, sewerage and sewage disposal, and the collection and disposal of garbage, refuse, waste, ashes, trash and any other similar matter, shall have plenary power and authority to provide by ordinance for the installation, continuance, maintenance or improvement of such service, to make reasonable regulations with respect thereto, and to impose by ordinance upon the users of such service reasonable rates, fees and charges to be collected in the manner specified in .the ordinance.... Notwithstanding the provisions of section four, article eleven of this chapter, any ordinance enacted or substantially amended under the provisions of this section shall be published as a Class II legal advertisement in compliance with the provisions of article three, chapter fifty-nine of this code, and the publica-

tion area for such publication shall be such municipality. In the event thirty percent of the qualified voters of the municipality by petition duly signed by them in their own handwriting and filed with the recorder of the municipality within fifteen days after the expiration of such publication protest against such ordinance as enacted or amended, the ordinance shall not become effective until it shall be ratified by a majority of the legal votes cast thereon by the qualified voters of such municipality at a regular municipal election or special municipal election, as the governing body shall direct....

**4.** *See McCoy v. Sistersville,* 120 W.Va. 471, 199 S.E. 260 (1938); *City of Moundsville v. Steele,* 152 W.Va. 465, 164 S.E.2d 430 (1968); *City of Charleston v. Board of Education,* 158 W.Va. 141, 209 S.E.2d 55 (1974); *Ellison v. City of Parkersburg,* 168 W.Va. 468, 284 S.E.2d 903 (1981); *City of Princeton v. Stamper,* 195 W.Va. 685, 466 S.E.2d 536 (1995); *City of Huntington v. Bacon,* 196 W.Va. 457, 473 S.E.2d 743 (1996); *City of Clarksburg v. Grandeotto, Inc.,* 204 W.Va. 404, 513 S.E.2d 177 (1998); and *Dean v. Town of Addison,* 207 W.Va. 538, 534 S.E.2d 403 (2000).

improvement of such service, to make reasonable regulations with respect thereto, and to impose by ordinance upon the users of such service reasonable rates, fees and charges to be collected in the manner specified in the ordinance...." The City believes the fee is consistent with this broad grant of power. The City further states that the standard is not whether the fee is "ideal" or even "prudent." Rather, this Court has found that ordinances enacted under W.Va. Code § 8–13–13 are presumptively valid unless they are clearly unreasonable.

■ We agree with the City that ordinances enacted pursuant to a municipality's powers under W.Va.Code § 8–13–13 are presumptively valid and a court should not invalidate such an ordinance unless it is clearly unreasonable. *See Ellison*, 168 W.Va. at 472, 284 S.E.2d at 906. The burden of proof lies with the appellant to prove that the user fee is clearly unreasonable and that it clearly fails to reasonably serve the purpose for which it was enacted. We believe that the appellant has failed to meet that burden.

■ We have "recognize[d] that perfect equity is impossible to achieve in any tax scheme, but perfect equity is not the test." *Clay County Citizens for Fair Taxation v. Clay County Commission*, 192 W.Va. 408, 411, 452 S.E.2d 724, 727 (1994). We further have explained that "[t]his Court has, thus, recognized that charges for services provided by municipalities cannot always be equally achieved upon all users. This Court will uphold the fee if it is sufficiently related to the use of the special service for which the fee is imposed." *Id.* With that in mind, we will not invalidate a fee merely because a litigant is able to suggest other possible ways of taxation and opine that such examples are more equitable. The appellant had the burden of proving that the City's ordinance clearly failed to reasonably serve the purpose for which it was enacted. As we discussed in the previous issue, the City of Charleston enacted this fee to pay for a portion of the expenses of providing police protection and street maintenance and repairs to those who work in the City and who use those roads and services. Accordingly, the circuit court

properly concluded that the appellant did not show that the ordinance failed to reasonably serve the purpose of funding a reasonable portion of the City of Charleston's police protection and street maintenance related thereto.

■ The appellant warns that once this fee is approved the City may attempt to increase it, possibly even double or triple the fee amount and there would be no restraint on the City. Should the City of Charleston or other cities attempt to artificially inflate this fee and gouge the public by increasing the fee to exorbitant amounts, there is a remedy for such action. We must point out that a fee can be struck down in light of W.Va.Code § 8–13–13, if that fee is unreasonable or excessive. While there is no evidence that the $1.00 fee in this case is an unreasonable amount, we hereby further hold that a reasonableness determination with regard to the question of excessiveness of an enacted fee is clearly an issue within the scope of review by a circuit court or by this Court on appeal.

■ As we have discussed throughout this Opinion, W.Va.Code § 8–13–13 allows municipalities "to make reasonable regulations ... and to impose by ordinance upon the users of such service *reasonable* rates, fees and charges to be collected in the manner specified in the ordinance." (Emphasis added). Thus, the amount of fees imposed by any city must bear a direct and reasonable relationship to the actual services provided in exchange for the fee. Moreover, any fee that does not meet those standards will be struck down by a circuit court or by this Court as unreasonable and in violation of W.Va.Code § 8–13–13. If cities are tempted to inflate such fees and adopt immediate or unwarranted increases thereby gouging and imposing burdensome and unfair collections they should be mindful of this admonishment and wary of imposing excessive fees.

## C. Procedural Questions Surrounding the Enacted User Fee.

■ The appellant argues that the City failed to provide timely and accurate pre-adoption notice as prescribed by W.Va.Code § 8–11–4(a)(2),[5] which requires a municipali-

---

5. W.Va.Code § 8–11–4(a)(2), provides:

At least five days before the meeting at which a proposed ordinance, the principal ob-

ty to publish notice of the proposed adoption of an ordinance at least five days before the meeting where it will be voted upon. The City's newspaper notices stated that the date on which the final vote would take place was September 2, 2003, when in actuality the vote was held on September 15, 2003. The appellant also argues that the City violated W.Va. Code § 8–11–4(a)(3),[6] by amending the proposed bill and changing language on more than 100 lines and then passing the bill during the same meeting. Finally, the appellant argues that the City was in violation of W.Va. Code § 8–13–13 by not providing post-adoption notice of its enactment.

Conversely, the City maintains that any issues surrounding the 2003 passage of the ordinance are now moot in light of the re-publication and re-enactment in 2004. Moreover, the City contends that W.Va.Code § 8–11–4(a)(2) does not apply to this ordinance with regard to pre-adoption notice. The City also states that the Bill passed on September 15, 2003, was not "substantially amended" from the Bill published in the newspaper and thus not in violation of law.

 We have held that, " '[c]ourts will not ordinarily decide a moot question.' Pt. 1, syllabus, *Tynes v. Shore*, 117 W.Va. 355 [185 S.E. 845] [(1936)]." Syllabus Point 1, *State ex rel. Hedrick v. Board of Comm'rs of County of Ohio*, 146 W.Va. 79, 118 S.E.2d 73 (1961). In Syllabus Point 1 of *State ex rel. Durkin v. Neely*, 166 W.Va. 553, 276 S.E.2d 311 (1981), this Court held that:

"Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or property are not properly cognizable by a court." Syllabus Point 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908).

In this case, the substance of Bill 7070, which was enacted on June 7, 2004, was the same as Bill 7002, which was enacted in September of 2003, except for the fact that Bill 7070 made the fee retroactively effective on January 1, 2004. Having considered the parties' arguments and having thoroughly reviewed the record in this case, we find that questions surrounding the adoption of Bill 7002 were rendered moot by the City's re-enactment of Bill 7070. Consequently, it would be an exercise in futility for this Court to undertake an analysis of Bill 7002 as originally enacted. If we were to find that the 2003 ordinance was invalid either on substantive or procedural grounds, that finding would be of little to no consequence inasmuch as the City amended and re-enacted the ordinance on June 7, 2004.

 We do, however, recognize a defect with the enactment of Bill 7070 which we believe the City can remedy by holding an election on the issue of the passage of that ordinance. Our problem is not with the fact that the City only provided pre-adoption notice with regard to the adoption of the ordinance as opposed to post-adoption notice with regard to the protest provisions of W.Va.Code § 8–13–13. As we said in Syllabus Point 1 of *Nine v. Grant Town*, 190 W.Va. 86, 87, 437 S.E.2d 250, 251 (1993), "Because W.Va.Code, 8–13–13 (1971), is silent as to when publication should be made with regard to the adoption of an ordinance, the general rule is that publication should be done in advance of the passage of the ordinance." Our issue with the enactment of the June 2004 ordinance surrounds the requirement as prescribed by W.Va.Code § 8–13–13 that:

In the event thirty percent of the qualified voters of the municipality by petition duly

---

ject of which is the raising of revenue for the municipality, is to be finally adopted, the governing body shall cause notice of the proposed adoption of said proposed ordinance to be published as a Class I–0 legal advertisement in compliance with the provisions of article three, chapter fifty-nine of this code, and the publication area for such publication shall be the municipality. The notice shall state the subject matter and general title or titles of such proposed ordinance, the date, time and place of the proposed final vote on adoption, and the place or places within the municipality where

such proposed ordinance may be inspected by the public. A reasonable number of copies of the proposed ordinance shall be kept at such place or places and be made available for public inspection. Said notice shall also advise that interested parties may appear at the meeting and be heard with respect to the proposed ordinance.

6. W.Va.Code § 8–11–4(a)(3), provides that, "[a] proposed ordinance shall not be materially amended at the same meeting at which finally adopted."

signed by them in their own handwriting and filed with the recorder of the municipality *within fifteen days after the expiration of such publication protest against such ordinance as enacted or amended,* the ordinance shall not become effective until it shall be ratified by a majority of the legal votes cast thereon by the qualified voters of such municipality at a regular municipal election or special municipal election, as the governing body shall direct.

(Emphasis added).

In the case at hand, notices were published on May 21, 2004, and May 28, 2004, and the fee ordinance was re-passed and re-enacted by the City on June 7, 2004. Both notices included a provision that if thirty percent of the qualified voters of the City opposed the ordinance by signing and filing a petition by June 14, 2004, then the ordinance would not become effective until ratified at an election. Thus, by the City's own publication it cut in half the fifteen day allotment provided by statute which allows for thirty percent of qualified voters to sign petitions of protest to force the City to hold an election on the issue of the ordinance. We believe that the City was in substantial compliance with the publication requirements of W.Va. Code § 8–13–13. Nonetheless, it may have prevented qualified voters from exercising their right to challenge the enactment of the ordinance by including an incorrect date for gathering signatures in protest.

Initially, it is clear to us that W.Va. Code § 8–13–13 necessarily intended for qualified voters to have fifteen days from publication notice for the opportunity to protest an enacted ordinance if such notice was published *after* the adoption of the ordinance. We further believe that W.Va.Code § 8–13–13 stands for the position that a qualified voter necessarily has fifteen days from the adoption of an ordinance even if a city has chosen to comply with the notice requirements by providing adequate pre-adoption notice as the City did in this case. To hold otherwise would make the ability to challenge an ordinance enacted by a city council completely non-existent as no reasonable person would gather signatures against the enactment of an ordinance before they knew whether or not the particular ordinance was actually enacted by a city council. Likewise, ordinances can be-and often are-amended substantially from the original bill submitted to a city council which further makes it impossible for a potential protestor to gather signatures against a bill of which he or she is without reasonable certainty with regard to its specific provisions and requirements.

Thus, the City's two notices published prior to the June 7, 2004, passage of the ordinance did not provide enough time for qualified voters to exercise their statutorily prescribed right to protest. This mistake, however, will not defeat the City's ordinance as a matter of law. Nonetheless, the City must remedy this defect by holding an election to allow registered voters from the City of Charleston the opportunity to vote on the adoption of the ordinance. Therefore, we direct the Circuit Court of Kanawha County to order the City of Charleston to conduct an election in full compliance with W.Va.Code § 8–13–13 and all other applicable statutes. We also strongly suggest that the City of Charleston comply with all statutorily prescribed notice requirements surrounding such an election.

### D. Remaining Issues Surrounding the City User Fee.

The appellant raises several additional assignments of error. However, we find none of them merit any extended discussion or constitute reversible error.

First, the appellant asserts that the ordinance's requirement that employers withhold the fee from each employee's pay violates W.Va.Code § 21–5–3,[7] which requires employers to make full payment to employees minus authorized deductions and authorized wage assessments. He further maintains that since the City is a legal entity

7. W.Va.Code § 21–5–3, in part, provides:
 Every person, firm or corporation doing business in this State ... shall settle with its employees at least once in every two weeks, unless otherwise provided by special agreement, and pay them the wages due, less authorized deductions and authorized wage assignments, for their work or services....

that is subordinate to the State of West Virginia, that the City may not lawfully require State agencies, as employers, to do anything with respect to their employees. The City states that W.Va.Code § 8–13–13 grants municipalities plenary power to charge for services "and also to make reasonable regulations with respect thereto" and that such administrative procedures are clearly within those powers.

In this case, the procedures required by the ordinance in question are reasonable and logical in utilizing employers to assist in the facilitation and collection of the fee through their existing employer payroll withholding procedures. We do not see how the requirements of the ordinance create a substantial or unique burden as employers are already regularly withholding sums from employees' periodic paychecks. Moreover, with regard to the collection of fees from the State, the circuit court correctly held, "that such portions of the ordinance and regulations issued pursuant thereto which would require the State to become liable for the debts of its employees are invalid and void as unconstitutional." While that is a correct ruling by the circuit court, we believe that the principles of comity and mutual respect should govern the operation of the relationship between the City and the State in a situation such as the one before us. Thus, we believe that under the principles of comity the State can *agree* to collect the fee on behalf of the City.

The appellant next asserts that the ordinance's requirement of employers and employees to disclose and release employee Social Security numbers to officials and agents of the City as well as the requirement of self-employed individuals to disclose and release their Social Security numbers is in violation of State and federal laws. He also contends that the fee is not a uniform tax and that the unfairness and lack of uniformity violates the West Virginia and United States Due Process and Equal Protection clauses, as well as the tax uniformity provision of W.Va. Const. Art. X § 9.

Although the appellant makes these claims, he does not provide to this Court any examples of how the circuit court acted in an erroneous manner or in a manner that was not consistent with the laws of West Virginia or of the United States Constitution. Rather, the appellant's assertions lack specificity and particularity and are unsupported by his brief. In the absence of such supporting arguments or authority, we deem these assignments of error to have been waived. As we explained in *State Dept. Of Health v. Robert Morris N.,* 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995), "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.... Judges are not like pigs, hunting for truffles buried in briefs." (Citation omitted). Moreover, as we held in Syllabus Point 2 of *WV Dept. of Health & Human Resources Employees Federal Credit Union v. Tennant,* 215 W.Va. 387, 599 S.E.2d 810 (2004), " 'An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.' Syllabus Point 5, *Morgan v. Price,* 151 W.Va. 158, 150 S.E.2d 897 (1966)."

Likewise, this Court has previously adhered to the rule that, "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock,* 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996). *Accord State v. Allen,* 208 W.Va. 144, 162, 539 S.E.2d 87, 105 (1999); *State v. Easton,* 203 W.Va. 631, 642 n. 19, 510 S.E.2d 465, 476 n. 19 (1998); *State v. Lilly,* 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995). Based upon all of the above as well as our thorough review of the record, we find that there is no merit to the appellant's allegations with regard to these issues.

In summary, this Court affirms the decision of the circuit court insofar as it upheld the "user fee" as a fee and not a tax and concluded that the City of Charleston had the authority to enact such a fee under applicable State statutes. We do, however, reverse the circuit court's decision to the extent that it upheld the City's failure to properly

follow the notice and publication requirements of W.Va.Code § 8-13-13. While the City's mistake will not defeat the City's ordinance as a matter of law due to its substantial compliance with statutory notice and publication requirements, we do, however, direct the circuit court to order the City of Charleston to hold an election forthwith wherein City voters shall have the opportunity to ratify or strike down the City's user fee ordinance.

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on June 28, 2004, is affirmed in part and reversed in part, and remanded with directions for the Circuit Court of Kanawha County to order the City of Charleston to provide for an election on the issue of the user fee ordinance enacted by the City of Charleston on June 7, 2004.

Affirmed in part, Reversed in part, and Remanded with directions.

BENJAMIN, Justice, concurring.

While I concur in the ultimate result reached by the majority of this Court, I write separately to note that I would not have ordered an election to be held without first giving the qualified voters of the City of Charleston the opportunity to fulfill the statutory election trigger. As noted by the majority, W.Va.Code § 8-13-13 (1971), provides that an election may be held to ratify or reject a duly published and enacted ordinance *if* thirty percent of the municipality's qualified voters sign a petition protesting the enactment of such ordinance within fifteen days after the last publication date of such ordinance as a Class II legal advertisement.[1] By simply ordering an election to be held, this Court has ignored this statutory election trigger and required the City to incur the

expense of holding a special election to ratify or reject the subject ordinance absent the petition of thirty percent of the City's qualified voters. Instead of simply ordering an election to be held, I would have given the qualified voters of the City of Charleston up to thirty days[2] from receipt of this Court's decision to fulfill this statutory requirement. If they were able to gather the requisite signatures, the City of Charleston would be required to hold an election to ratify or reject the ordinance. Otherwise, the City and its citizens should be spared the expense of a special election.

STARCHER, J., concurring.

While I concur in the result reached by the majority of this Court, I write separately to express my concern that the fee in this case is unfair as applied. I recognize the importance of the purposes for which the fee was enacted and I have no personal objection to paying the fee.

The fee, however, is not assessed against some segments of the population that receive the same services paid for by the fee, while the fee overly burdens others. For these reasons I believe the City should seek a more equitable assessment mechanism.

For example, wealthy retired residents who live within the Charleston city limits simply avoid the fee because they are not on the payroll of government or private business. Physicians and other professionals who live in the City's wealthiest neighborhoods and work outside the borders of the City likewise are not required to pay. Tourists and other persons who shop and otherwise participate in the City's commerce similarly escape the fee. All of these folks receive the same benefits from the City as do those who are required to pay the fee.

On the other side of the coin, there are others who are economically less fortunate

---

1. Mr. Cooper is not a citizen of the City of Charleston and, therefore, cannot be a qualified voter of the City of Charleston. W.Va.Code § 8-13-13 speaks only to the ability of "qualified voters" of the municipality to challenge an ordinance and require an election. Therefore, he likely does not have standing to submit a petition with the requisite thirty percent of qualified voters signatures and cannot sign such a petition.

2. Pursuant to W.Va.Code § 59-3-2(a) (2002) a Class II legal advertisement is required to be published once a week for two consecutive weeks. As W.Va.Code § 8-13-13 provides for 15 days from the last publication date for the filing of the petition containing the requisite signatures, a thirty day window for the gathering of signatures and filing of the petition is actually more than required by statute.

on whom the fee is more burdensome. These folks might even be required to pay double or more in some instances. For example, a single mother who must work at two jobs within the City to supply food and shelter to her family may have to pay the fee at both places of employment, since she would be on two separate payrolls. Likewise, low-income families in which both parents work are required to pay twice. Counsel for the City confessed before this Court in oral argument that there was no practical mechanism in place to avoid this.

These concerns may appear *de minimis* at first glance, which arguably is true at the current fee assessment level. However, now that the fee has been approved by this Court, future increases are likely to occur—as recently happened in Huntington. The majority's assurance that fee increases might be struck down based on the provisions of *W.Va. Code*, § 8–13–13 (1971), should the fee be determined unreasonable or excessive, offers no certainty and is little comfort to the economically less–advantaged.