640 S.E.2d 142

**STATE ex rel. Robert L. McCABE, Petitioner Below, Appellant,**

v.

**Evelyn SEIFERT, Warden, Northern Correctional Center, Respondent Below, Appellee,**

and

**West Virginia Division of Corrections Parole Services, Appellee.**

No. 32976.

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 19, 2006.

Decided: Nov. 29, 2006.

---

Melissa J. Giggenbach, Esq., Morgantown, for the Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Dawn E. Warfield, Esq., Deputy Attorney General, Charleston, for the Appellees.

PER CURIAM.

This case is before this Court upon the appeal of Robert L. McCabe from the April 20, 2005, order of the Circuit Court of Monongalia County denying him relief in habeas corpus. McCabe was convicted in that Court, in 2000, of five felonies: three counts of obtaining money by false pretenses, one count of obtaining labor, services and materials by false pretenses and one count of conducting a fraudulent scheme. The convictions were entered upon guilty pleas and concerned a contracting business McCabe operated in the Monongalia County area. McCabe was sentenced to a term of 1 to 10 years upon each of the convictions, the sentences to run concurrently. No direct appeal was filed.

In this habeas proceeding, filed in the Circuit Court in April 2005, McCabe alleged several grounds for relief and focused, primarily, upon an alleged discrepancy between the sentencing order and his underlying plea agreement. The alleged discrepancy concerns the date his concurrent sentences were to commence. Pursuant to its order of April 20, 2005, the Circuit Court denied relief upon all grounds. After McCabe filed his appeal in this Court from that order, he was released upon parole. That fact was noted by this Court during oral argument at which time counsel for the State asserted that, in view of McCabe's release, this appeal is moot. Also during oral argument, counsel for McCabe stated that two unrelated issues raised in his appeal from the April 20, 2005, order are now withdrawn.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. Upon careful examination, and in view of McCabe's release from incarceration in combination with (1) his withdrawal of a substantial portion of the appeal from this Court's consideration and (2) the fact that he raises no issues concerning the terms of his parole, other than an uncertainty as to its termination date brought about by the alleged discrepancy, this Court concludes that this appeal is moot and should be dismissed from the docket of this Court, with leave granted to McCabe to file a motion in the Circuit Court for a corrected sentencing order.

I.

Procedural Background

In 1996, in an unrelated Monongalia County prosecution, McCabe was convicted of conspiracy to commit murder, obtaining money by false pretenses and obtaining property in return for a worthless check. He received an aggregate sentence of 2 to 15 years with an effective sentence date of June 10, 1995. McCabe was placed upon parole as to those convictions in 1998. His parole was revoked, however, and he was reincarcerated.

In January 2000, a Monongalia County grand jury returned a seven count indictment against McCabe, No. 00–F–43, charging him with offenses relating a to contracting business he operated in the Monongalia County area. On October 16, 2000, McCabe, his court appointed counsel and the prosecuting attorney signed a plea agreement made under the provisions of West Virginia Rule of Criminal Procedure 11(e)(1)(C).[1] Pursuant thereto, McCabe agreed to plead guilty to three counts of obtaining money by false pretenses, one count of obtaining labor, services and materials by false pretenses and one count of conducting a fraudulent scheme. The agreement further provided that McCabe would serve five concurrent sentences of 1 to 10 years each and that the sentences would be "consecutive to the sentence or sentences which [McCabe] is currently serving [the 2 to 15 years for the 1996 convictions]."

On December 11, 2000, the Circuit Court entered an order accepting the plea agreement. The order made clear that McCabe understood that the plea agreement was binding and that he would be sentenced in accord with the agreement's provisions. As the order reflects, McCabe was sentenced to five concurrent terms of 1 to 10 years each for his convictions of obtaining money by false pretenses, obtaining labor, services and materials by false pretenses and conducting a fraudulent scheme. The order, however, contained a discrepancy concerning the date the concurrent sentences were to commence. Although the plea agreement stated that those sentences would be served consecutively to the sentence or sentences McCabe received with regard to the 1996 convictions, the December 11, 2000, order indicated that the new sentences would not begin to run until McCabe was again paroled upon the 1996 convictions.[2] No direct appeal was ever filed from the order.

The petition for a writ of habeas corpus was filed in the Circuit Court of Monongalia County on April 13, 2005, under the West Virginia Post–Conviction Habeas Corpus Act. *W.Va.Code*, 53–4A–1 (1967), *et seq.* McCabe, represented by new appointed counsel, alleged several grounds for relief and focused, primarily, upon the discrepancy between the sentencing order of December 11, 2000, and the underlying plea agreement. Pursuant to the order of April 20, 2005, however, the Circuit Court denied relief upon all grounds. In particular, the Circuit Court indicated that the purported discrepancy did not affect the commencement of McCabe's concurrent 1 to 10 year sentences as contemplated under the plea agreement.

The appeal from the denial of habeas relief was filed with the Clerk of the Circuit Court on July 11, 2005, and received in this Court in August 2005. On January 23, 2006, McCabe was released upon parole with regard to the current convictions.[3] Thereafter,

1. Rule 11(e)(1)(C) provides:
   (e) *Plea agreement procedure.*—(1) In general.—The attorney for the state and the attorney for the defendant or the defendant when acting *pro se* may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the state will do … the following: … (C) Agree that a specific sentence is the appropriate disposition of the case [.]

2. After noting that McCabe was returned to the penitentiary upon a previous parole revocation concerning the 1996 convictions, the December 11, 2000, order stated: "Effective Sentence Date: Date of parole on sentences for Monongalia County cases 95–F–83, 95–F–88 and 96–F–14 [the 1996 convictions]."
   The record does not reveal why the commencement of McCabe's sentences was made contingent upon his parole with regard to the 1996 convictions. The Circuit Court made no reference to parole during the plea hearing concerning the current convictions. Instead, the Circuit Court stated that the sentences would be consecutive to the sentence or sentences McCabe previously received. A letter dated August 2, 2004, to McCabe from the West Virginia Division of Corrections stated that the December 11, 2000, order "is the only order we have ever received that establishes the effective sentence date as 'Date of parole' on prior sentences [;] … your 1 year minimum on the new terms could not begin until you were granted parole on cases 95–F–83, 95–F–88 and 96–F–14."

3. In view of his current parole, this Court permitted McCabe to add the West Virginia Division of Corrections Parole Services as a party to this appeal.

final argument was heard by this Court, and the appeal was submitted for decision.

## II.

### Standard of Review

■ As long recognized by this Court: "Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court." Syl. pt. 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908). *See also*, syl. pt. 5, *Cooper v. City of Charleston*, 218 W.Va. 279, 624 S.E.2d 716 (2005); syl., *Kemp v. State*, 203 W.Va. 1, 506 S.E.2d 38 (1997). Similarly, syllabus point 1 of *Tynes v. Shore*, 117 W.Va. 355, 185 S.E. 845 (1936), holds: "Courts will not ordinarily decide a moot question."

## III.

### Discussion

■ The right to petition for relief in habeas corpus is recognized in The Constitution of the United States and in The Constitution of West Virginia.[4] The State Constitution and other provisions of State law confer jurisdiction in such cases upon this Court and upon the circuit courts.[5] Complimentary to those broad provisions, the West Virginia Legislature has recognized various circumstances wherein the filing of a petition for a writ of habeas corpus would be appropriate. For example, *W.Va.Code*, 53–4–1 (1923), provides for the granting of habeas relief to a person "detained without lawful authority," and, in *W.Va.Code*, 49–5–14(b) (1999), the right to seek release by habeas corpus in juvenile matters is acknowledged. Moreover, *W.Va.Code*, 27–5–5 (1974), recognizes the right to petition for habeas relief in involuntary hospitalization cases, and *W.Va.Code*, 48–1–222 (2001), defines a domestic relations action as including an action to allocate custodial responsibility and determine decision-making responsibility or to otherwise determine child custody, "as in an action petitioning for a writ of habeas corpus wherein the issue is child custody."

■ As stated above, McCabe's petition for a writ of habeas corpus was filed in the Circuit Court under the West Virginia Post–Conviction Habeas Corpus Act. As this Court concluded in syllabus point 2 of *State ex rel. Burgett v. Oakley*, 155 W.Va. 276, 184 S.E.2d 318 (1971): "The intent of the Post–Conviction Habeas Corpus Act, Code, 53–4–1, *et seq.*, as amended, was to liberalize, rather than restrict, the exercise of the writ of habeas corpus in criminal cases." Syl. pt. 1, *Adams v. Circuit Court of Randolph County*, 173 W.Va. 448, 317 S.E.2d 808 (1984).[6] The

---

4. U.S. Const. art. I, § 9, provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." Similarly, W.Va. Const. art. III, § 4, provides that "[t]he privilege of the writ of habeas corpus shall not be suspended."

5. W.Va. Const. art. VIII, § 3, provides that the Supreme Court of Appeals "shall have original jurisdiction of proceedings in habeas corpus, mandamus, prohibition and certiorari." *See also*, W.Va. R.App. P. 14(a), recognizing this Court's original jurisdiction in habeas corpus cases, and *W.Va.Code*, 51–1–3 (1923), recognizing this Court's original and appellate jurisdiction in habeas corpus cases.

  With regard to circuit courts, W.Va. Const. art. VIII, § 6, provides that such courts "shall have original and general jurisdiction ... of proceedings in habeas corpus [.]" *See also*, *W.Va.Code*, 51–2–2 (1978), conferring original and general jurisdiction upon the circuit courts in habeas corpus cases.

6. The interrelationship of the West Virginia Post–Conviction Habeas Corpus Act and other remedies, and particularly as to habeas relief under *W.Va.Code*, 53–4–1 (1932), *supra*, is set forth in *W.Va.Code*, 53–4A–1(e) (1967), which states, in part:

  The writ of habeas corpus ad subjiciendum provided for in this article is not a substitute for nor does it affect any remedies which are incident to the criminal proceedings in the trial court or any remedy of direct review of the conviction or sentence, but such writ comprehends and takes the place of all other common law and statutory remedies, including, but not limited to, the writ of habeas corpus ad subjiciendum provided for in article four [*W.Va.Code*, 53–4–1, *et seq.*,] of this chapter, which have heretofore been available for challenging the validity of a conviction or sentence and shall be used exclusively in lieu thereof: Provided, that nothing contained in this article shall operate to bar any proceeding or proceedings in which a writ of habeas corpus ad subjciciendum is sought for any purpose other than to challenge the legality of a criminal

relevant portion of the Act to these proceedings, *W.Va.Code*, 53–4A–1(a) (1967), provides:

Any person convicted of a crime and incarcerated under sentence of imprisonment therefor who contends that there was such a denial or infringement of his rights as to render the conviction or sentence void under the Constitution of the United States or the Constitution of this State, or both, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under the common-law or any statutory provision of this State, may, without paying a filing fee, file a petition for a writ of habeas corpus ad subjiciendum, and prosecute the same, seeking release from such illegal imprisonment, correction of the sentence, the setting aside of

the plea, conviction and sentence, or other relief [.]

In his appeal from the April 20, 2005, order denying habeas relief, McCabe asserted, *inter alia*, that the Circuit Court committed error in refusing to find that his former court appointed counsel was ineffective and in refusing to set aside his current guilty pleas under indictment No. 00–F–43 as involuntary. During oral argument before this Court, however, McCabe's new appointed counsel stated that those assignments of error are now withdrawn.[7]

McCabe focuses primarily, however, upon the discrepancy between the December 11, 2000, sentencing order and the underlying plea agreement concerning the commencement date of his concurrent sentences under indictment No. 00–F–43. Although the plea agreement stated that those sentences would be consecutive to the sentences he received with regard to the 1996 convictions, the De-

conviction or sentence of imprisonment therefor.

With regard to the disposition of cases under the Act, *see* this Court's Rules Governing Post–Conviction Habeas Corpus Proceedings in West Virginia.

**7.** McCabe's counsel indicated to this Court that the two issues were being withdrawn because McCabe now states that he does not want his guilty pleas under indictment No. 00–F–43 to be vacated.

In addition to those two issues, however, McCabe asserts that he was entitled to credit for time upon his current convictions under indictment No. 00–F–43 for the period between January 2000 when the indictment was returned and October 2000 when he executed the plea agreement. McCabe's former court appointed counsel failed to file an appeal from an adverse ruling by the sentencing court upon that claim. McCabe now contends that, in denying relief in habeas corpus in the subsequent April 20, 2005, order, the Circuit Court committed error in concluding that the failure to file an appeal concerning the claim for credit for time was "probably harmless" because such an appeal would have been "entirely speculative."

McCabe's claim for credit for time, however, was the subject of a separate habeas corpus petition filed *pro se* in the Circuit Court of Monongalia County in August 2003 and denied on September 10, 2003. In any event, McCabe acknowledges the decision of this Court in *Echard v. Holland*, 177 W.Va. 138, 351 S.E.2d 51 (1986), which held that presentence credit on one sentence is not available where a criminal defendant

is already incarcerated upon another conviction. Here, during the period between January 2000 and October 2000, McCabe was already incarcerated pursuant to his 1996 convictions under indictments 95–F–83, 95–F–88 and 96–F–14. To give McCabe credit for time again under indictment No. 00–F–43, as he now asks this Court to do, would constitute the functional equivalent of permitting him to serve the consecutive sentences in a concurrent manner which is contrary to both the plea agreement and the December 11, 2000, sentencing order. Although McCabe asserts that *Echard* should be overruled, this Court declines to so rule.

In fact, the principles expressed in *Echard* were recently confirmed and clarified by this Court in *State v. Middleton*, no. 33048, 220 W.Va. 89, 640 S.E.2d 152 (Nov. 29, 2006). In *Middleton*, this Court indicated that, rather than awarding a criminal defendant duplicate credit for time, courts have uniformly held that, when consecutive sentences are imposed for two or more offenses, periods of presentence incarceration may be credited only against the aggregate of all terms imposed. As syllabus point 6 of *Middleton* holds:

Consistent with our decision in *Echard v. Holland*, 177 W.Va. 138, 351 S.E.2d 51 (1986), when a trial court awards credit for presentence incarceration to a defendant receiving consecutive sentences, the period of presentence incarceration must be credited against the aggregated maximum term of the consecutive sentences. To the extent that language in the decision of *State v. Scott*, 214 W.Va. 1, 585 S.E.2d 1 (2003), suggests a different allocation of presentence credit to consecutive sentences, it is disapproved.

cember 11, 2000, order provided that those sentences would not begin to run until McCabe was again paroled upon the 1996 convictions. The record does not indicate why the commencement of the sentences under indictment No. 00–F–43 was made contingent upon his parole with regard to the 1996 convictions. *See*, n. 2, *supra.*

The record does reveal, however, that the principal impact of the discrepancy was upon the minimum sentence to be served under McCabe's concurrent 1 to 10 year terms. After McCabe served the 1 year minimum thereof and appeared to be otherwise eligible for parole, the West Virginia Parole Board granted him "administrative parole" upon the 1996 convictions and concluded that, only then, would his 1 year minimum term under the new convictions begin to run. Consequently, as the State agrees, McCabe was required to serve the minimum term under indictment No. 00–F–43 twice before becoming eligible for parole upon the current convictions.

As reflected in the order of April 20, 2005, the Circuit Court denied habeas relief concerning the discrepancy between the December 11, 2000, sentencing order and the plea agreement. A review of the April 20, 2005, order, however, indicates that, in so ruling,

the Circuit Court confused that issue with the separate claim raised by McCabe concerning presentence credit for time. *See*, n. 7, *supra.* Nevertheless, McCabe has now been released upon parole with regard to his convictions under indictment No. 00–F–43. Accordingly, the State contends that, although McCabe may be entitled to a corrected sentencing order, this appeal is otherwise moot.

As stated above, "[m]oot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court." Syl. pt. 1, *State ex rel. Lilly v. Carter, supra. See also*, syl. pt. 3, *State v. Eddie Tosh K.,* 194 W.Va. 354, 460 S.E.2d 489 (1995); syl. pt. 1, *State ex rel. Durkin v. Neely,* 166 W.Va. 553, 276 S.E.2d 311 (1981); syl. pt. 1, *State ex rel. Hedrick v. Board of Commissioners,* 146 W.Va. 79, 118 S.E.2d 73 (1961).[8]

In *State ex rel. Richey v. Hill,* 216 W.Va. 155, 603 S.E.2d 177 (2004), the petitioner, found guilty of sexual assault in the third degree, sought relief in mandamus in this Court to obtain post-conviction DNA testing of the victim's clothing. This Court denied relief upon the ground of *res judicata*[9] and

---

**8.** An exception to the above principle has been recognized by this Court for issues which may be "repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature." Syl. pt. 3, *State ex rel. Shifflet v. Rudloff,* 213 W.Va. 404, 582 S.E.2d 851 (2003); syl. pt. 1, *Israel v. W.Va. Secondary Schools Activities Commission,* 182 W.Va. 454, 388 S.E.2d 480 (1989).

In view of McCabe's focus upon the discrepancy between the plea agreement and the sentencing order, however, this case is an unlikely candidate for that exception. As set forth in footnote 2 above, the letter of August 2, 2004, to McCabe from the West Virginia Division of Corrections stated that the December 11, 2000, sentencing order "is the only order we have ever received that establishes the effective sentence date as 'Date of Parole' on prior sentences [.]" Nothing in the record before this Court suggests that such a discrepancy constitutes an issue which has been repeatedly presented for adjudication.

**9.** Prior to seeking mandamus relief in this Court, the petitioner made a number of unsuccessful attempts in various judicial forums to challenge his sexual assault conviction. Some of the challenges took the form of habeas corpus petitions,

a *coram nobis* petition and a motion for relief under Rule 60(b) of the West Virginia Rules of Civil Procedure.

"*Coram nobis*" is defined in Black's Law Dictionary 338 (7th ed.1999), in part, as a writ of error "directed to a court for review of its own judgment and predicated on alleged errors of fact." As stated in *Richey:* "We have noted that even though *coram nobis* is abolished in purely civil cases, it may still be available in a post-conviction context when the petitioner is not incarcerated." 216 W.Va. at 162 n. 10, 603 S.E.2d at 184 n. 10. Here, inasmuch as McCabe was paroled after the filing of this appeal, he asks this Court, as an alternative to reversing the denial of habeas relief, to convert his appeal into a *coram nobis* proceeding. The State, on the other hand, asserts that there is no precedent for such a conversion and that the remedy of *coram nobis* is not available under the circumstances herein. As discussed in this opinion, however, this Court concludes that the only relief to which McCabe is now entitled is leave to file a motion below for a corrected sentencing order. Therefore, a resolution of whether McCabe may convert this appeal into a *coram nobis* proceeding is unnecessary.

also because no authority in the law mandated DNA testing on behalf of criminal defendants who were not incarcerated. Upon the latter ground, this Court, in *Richey,* compared the petitioner's request for mandamus relief to the remedy of habeas corpus and observed:

> Our concern in *Zain* I [recognizing the remedy of habeas corpus in cases where false serology evidence was presented upon behalf of the State] for those still incarcerated flowed, at least in part, from the jurisdictional requirement that habeas lies only for one "convicted of a crime and incarcerated under sentence of imprisonment therefor [.]" W.Va.Code § 53–4A–1(a) (1967) (2000 Repl.Vol.). * * * [O]ur own post-conviction habeas corpus statute, and the views of other jurisdictions establish that a post-conviction petitioner seeking DNA testing must be incarcerated.

216 W.Va. at 160–61, 164, 603 S.E.2d at 182–83, 186.

Moreover, in *Kemp v. State,* 203 W.Va. 1, 506 S.E.2d 38 (1997), the appellant, Michael Kemp, filed an appeal in this Court from the denial of habeas relief with regard to his convictions of four counts of sexual abuse in the first degree. One week prior to oral argument, however, the appellant was released from the penitentiary. Consequently, this Court held that the appeal was moot. As this Court stated: "One week prior to oral arguments, the appellant was released from the penitentiary, and we find that the extraordinary relief offered by the post-conviction writ of habeas corpus is not available to Mr. Kemp." 203 W.Va. at 1, 506 S.E.2d at 38. In his habeas petition, the appellant had alleged ineffective assistance of counsel and certain errors committed at the trial court level. Although the opinion in *Kemp* did not state whether the appellant's release from the penitentiary was upon parole, this Court, in determining the appeal to be moot, noted: "We acknowledge that many state and federal courts have determined that parole or probation is sufficient restriction of freedom to warrant a writ be issued. However, with this particular set of facts we will not decide that issue at this time." 203 W.Va. at 2 n. 3, 506 S.E.2d at 39 n. 3.

In the present case, the State invites this Court to hold that parole is excluded from the word "incarcerated" within the context of *W.Va.Code,* 53–4A–1(a) (1967), of the West Virginia Post–Conviction Habeas Corpus Act, and that, therefore, inasmuch as McCabe has been released upon parole, he has no remedy under the Act. Such an extension of the law in the factual circumstances herein, however, is unnecessary. Nor would such an extension in this unique case be appropriate in view of the admonition expressed in *W.Va. Code,* 53–4A–1(e) (1967), of the Post–Conviction Habeas Corpus Act that the writ of habeas corpus provided for therein "comprehends and takes the place of all other common law and statutory remedies, including, but not limited to, the writ of habeas corpus ad subjiciendum provided for in article four [*W.Va.Code,* 53–4–1, *et seq.,*] of this chapter, which have heretofore been available for challenging the validity of a conviction or sentence and shall be used exclusively in lieu thereof [.]" *See,* n. 6, *supra.* Here, as in *Kemp,* the aspects of confinement or "incarceration" due solely to parole are not before this Court. McCabe has not sought to amend his petition for appeal to challenge the terms set forth in his parole agreement or the nature of his supervision. Rather, he raises the uncertainty as to the termination date of his parole brought about by the discrepancy between the December 11, 2000, sentencing order and the plea agreement. Thus, as in *Kemp,* McCabe's focus in this habeas proceeding is upon matters occurring prior to his release from incarceration.

■ Accordingly, in view of McCabe's release from incarceration in combination with: (1) his withdrawal of a substantial portion of the appeal from this Court's consideration and (2) the fact that he raises no issues concerning the terms of his parole agreement, other than an uncertainty as to its termination date brought about by the discrepancy, this Court concludes that this appeal is moot and should be dismissed from the docket of this Court. Nevertheless, while it is too late to cure McCabe's serving of two minimum sentences under indictment No. 00–F–43, he is entitled to a correction of the December 11, 2000, sentencing order.

The discrepancy notwithstanding, the sentencing order made clear that the plea agreement was binding pursuant to Rule 11(e)(1)(C) and that McCabe would be sentenced in accord with the agreement's provisions. The agreement provided that McCabe would serve the five concurrent sentences consecutively to the sentences concerning the 1996 convictions, and no requirement concerning parole upon the 1996 convictions was mentioned. Syllabus point 2 of *State ex rel. Forbes v. Kaufman*, 185 W.Va. 72, 404 S.E.2d 763 (1991), holds:

> Where the State agrees that a specific sentence is a suitable disposition of a criminal case and enters into a plea agreement with the defendant pursuant to Rule 11(e)(1)(C) of the West Virginia Rules of Criminal Procedure, the trial court may either accept or reject the entire agreement, but it may not accept the guilty plea and impose a different sentence.

*State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 193, 465 S.E.2d 185, 193 (1995).

Although *W.Va.Code*, 53–4A–1(a) (1967), of the Post–Conviction Habeas Corpus Act provides for the correction of sentences, *see*, syl. pt. 2, *State ex rel. Koton v. Coiner*, 155 W.Va. 668, 187 S.E.2d 209 (1972) (recognizing that the correction of sentences is authorized under the Act), subsection (e) of *W.Va.Code*, 53–4A–1 (1967), states that the Act does not affect remedies "incident to the criminal proceedings in the trial court." Upon the latter provision, and in conjunction with Rule 11(e)(1)(C), this Court grants McCabe leave to file a motion in the Circuit Court for a correction of the sentencing order to eliminate the condition that his sentences under indictment No. 00–F–43 would not begin to run until his parole upon the 1996 convictions.[10] Upon receipt of such a corrected order, the West Virginia Parole Board may adjust its records accordingly.

---

**10.** *See also*, Rule 35(a) of the West Virginia Rules of Criminal Procedure concerning the correction of sentences.

**1.** W.Va. Const. art. VIII, § 3 ("The supreme court of appeals shall have original jurisdiction of proceedings in habeas corpus ....."); W.Va.

## IV.

### Conclusion

Upon all of the above, the appeal filed by appellant Robert L. McCabe is moot and is dismissed from the docket of this Court, with leave granted to McCabe to file a motion in the Circuit Court of Monongalia County, West Virginia, for a corrected sentencing order.

Appeal Dismissed as Moot.

ALBRIGHT, Justice, dissenting.

My genuine dismay and concern with the majority opinion in this case is founded on three grounds: (1) the majority's seeming surrender of this Court's constitutionally bestowed power in habeas corpus matters; (2) the majority's use of legerdemain in order to find a viable issue moot; and (3) the majority's refusal to settle the recurring question of whether the avenue of a writ of coram nobis is still open in a criminal context.

### 1. Constitutional Grant of Authority

In West Virginia, the authority of this Court and the circuit courts to issue writs of habeas corpus is granted by our State Constitution in Article VIII, Sections 3 and 6.[1] In this state's Post–Conviction Habeas Corpus Act, West Virginia Code Chapter 53, Article 4A, the Legislature undertook to *supplant*, not merely supplement, that authority by boldly reciting in the Post–Conviction Habeas Corpus Act that the Act

> comprehends and takes the place of all other common law and statutory remedies, including, but not limited to, the writ of habeas corpus ad subjiciendum provided for in article four [§§ 53–4–1 et seq.] of this chapter, which have heretofore been available for challenging the validity of a conviction or sentence and shall be used exclusively in lieu thereof[.]

W.Va.Code § 53–4A–1(e) (1967) (Repl.Vol. 2000). The majority opinion in this case

---

Const. art. VIII, § 6 ("Circuit courts shall have original and general jurisdiction ... of proceedings in habeas corpus ....."); *see also* W.Va. Const. art. III, § 4 ("The privilege of the writ of habeas corpus shall not be suspended.").

represents an abject surrender of this Court's power to define the common law limits of the writ of habeas corpus, to which surrender I strongly and adamantly object.

The majority tells us that it is not deferring to the language of the Post–Conviction Habeas Corpus Act. Such deference is indeed improper because the people of this state, speaking through our constitution, expressly and unambiguously placed oversight of matters involving restraints on liberty directly within the jurisdiction of the state courts. Addressing the significance of this direct entrustment by the people in our constitution, this Court in *State ex rel. Burgett v. Oakley,* 155 W.Va. 276, 184 S.E.2d 318 (1971), considered earlier decisions of this Court:

> In the case of *Donaldson v. Voltz,* 19 W.Va. 156 (1881), in declaring certain legislative restrictions placed upon the exercise of the exemption provided in Article VI, Section 48, null and void, this Court recognized that this constitutional provision authorized the legislature to enact certain regulations, but said:

> " * * * Where a Constitution establishes a right but has not particularly designated the manner of its exercise, it is within the constitutional limits of the legislative power to adopt all necessary regulations in regard to the time and mode of exercising it, which are *reasonable and uniform and designed to secure and facilitate the exercise of such right.* Such a construction would afford no warrant for such an exercise of the legislative power, as under the pretense of regulating should subvert or destroy the right itself. (Emphasis added.)"

> In the case of *Buskirk v. Judge of Circuit Court,* 7 W.Va. 91, decided in 1873, Judge Haymond said:

> "The writs of *habeas corpus, mandamus* and prohibition are highly esteemed and appreciated by the intelligent and patriotic of all free, well regulated governments, and the absence and denial of them, as remedies to the citizen has ever been a source of well founded grief and lamentation by the same class in governments of oppression and despotism. So strong has been the regard and appreciation of the people of this State for these writs they have not been content to leave them ... dependent upon mere act of the Legislature, but they have ... made them constitutional writs.... * * * I am clearly of opinion that it was not the purpose or intention of the Legislature in enacting that section to prohibit this court from hearing application for, and awarding writs of ... *habeas corpus....*"

155 W.Va. at 279–80, 184 S.E.2d at 320 (emphasis in original). As a result of this discussion, it was held in syllabus point two of *Burgett* that:

> The intent of the Post–Conviction Habeas Corpus Act, Code, 53–4A–1 *et seq.,* as amended, was to liberalize, rather than restrict, the exercise of the writ of habeas corpus in criminal cases.

The majority in the case at hand says it recognized this holding from *Burgett.* However, since the conclusion reached by the majority is in direct conflict with the *Burgett* holding, I surmise from the majority's discussion that it reached its conclusion on what is the unreasonable ground that parole poses no infringement on individual liberty except in narrow circumstances attacking specific conditions imposed during the parole period. The history of habeas corpus and its application by courts in other jurisdictions does not limit the writ to such a narrow scope.

## 2. Continuing Viability of Issue Raised

The majority held Appellant's claim for relief from a sentence of imprisonment moot because Appellant has been released from prison and placed on parole. While the majority asserted that it was not basing its decision on any distinction between incarceration and parole, it acknowledged that Appellant's complaint questioned the proper termination date for his parole supervision—which were he to be again imprisoned for parole violation, would also be the date of termination of his sentence of imprisonment. It is clearly disingenuous to find this issue moot when the termination date thus has vigor as a critical component of the conditions of parole. This type of fancy footwork to circumvent the issue raised would be funny if it were not so serious.

The writ of habeas corpus was long ago dubbed the "great writ" by the United States Supreme Court in *Ex Parte Bollman,* 4 Cranch 75, 95, 2 L.Ed. 554 (1807). In the case of *Peyton v. Rowe,* 391 U.S. 54, 58, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), the Supreme Court explained the purpose of the writ of habeas corpus in the following way: "The writ of habeas corpus is a procedural device for subjecting executive, judicial, or private restraints on liberty to judicial scrutiny." (Footnote omitted.) The court in *Peyton* went on to observe that due to its lofty purpose the writ of habeas corpus is "both the symbol and guardian of individual liberty."

In the context of a post-conviction collateral attack, this Court has never held as a point of law that actual or implied incarceration is required to demonstrate judicially cognizable impingement of liberty in order to invoke habeas jurisdiction of the courts. Indeed, we have expressly acknowledged "that many state and federal courts have determined that parole or probation is sufficient restriction of freedom to warrant a writ [of habeas corpus] be issued." *Kemp v. State,* 203 W.Va. 1, 2 n. 3, 506 S.E.2d 38, 39 n. 3 (1997).[2] Other courts have explained the basis of our *Kemp* comment. For example, the Supreme Court of Washington in *Monohan v. Burdman,* aptly summarized the reasons for permitting parolees to pursue habeas corpus actions regardless of the substance of the actual challenge raised by explaining that:

> [T]he restrictions, limitations, and conditions attached to the usual parole status constitute a form of "custody" ... because a parolee, unlike the ordinary citizen is subject to supervision by his parole officer, limited in his mode, manner, and place of living and travel, restricted as to his associates and type of employment, and subject to reincarceration in the event of a breach of any conditions of his parole. Thus he is

not a free man in the commonly accepted sense.

530 P.2d at 336–37. A similar litany of restrictions on liberty was recited by the United States Supreme Court in *Morrissey v. Brewer,* 408 U.S. 471, 478, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and the high court added dimension to the level of restraint on freedom a parolee may encounter in one of its more recent decisions. In *Samson v. California,* ──── U.S. ────, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), the Supreme Court examined the constitutionality of a California law requiring a candidate for parole to provide advance consent to warrantless search and seizure for any or no reason by a law enforcement officer as a condition for release on parole. In reaching the conclusion that parolees are not protected under the Fourth Amendment against suspicionless searches by law enforcement, the high court observed that "parolees enjoy even less of the average citizen's absolute liberty than do probationers." *Id.* at 2198.

On the other hand, I appreciate that the right of a parolee to seek post-conviction relief through habeas corpus is not universally recognized, (*see* Andrea G. Nadel, *When is a Person in Custody of Governmental Authorities for Purpose of Exercise of State Remedy of Habeas Corpus—Modern Cases,* 26 A.L.R.4th 455, 466 (1983)). However, the raw numbers on each side of this issue is not a determinative factor in this debate considering the constitutional dimension habeas corpus has in this state.

The judicial authority granted—and the concomitant duty imposed—for habeas corpus proceedings under the West Virginia Constitution state simply and plainly the constitutional priority of our Court's jurisdiction to address cases in which any person duly alleges and seeks a remedy for material impediments to that person's liberty. The ma-

---

**2.** The following cases support this acknowledgment: *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); *In re Sturm,* 11 Cal.3d 258, 113 Cal.Rptr. 361, 521 P.2d 97 (1974); *Schooley v. Wilson,* 150 Colo. 483, 374 P.2d 353 (1962); *Carnley v. Cochran,* 123 So.2d 249, *rev'd on other grounds,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Baier v. State,* 197 Kan. 602, 419 P.2d 865 (1966); *Thoresen v.*

*State,* 239 A.2d 654 (Me.1968); *State ex rel. Atkinson v. Tahash* 274 Minn. 65, 142 N.W.2d 294 (1966); *State v. Gray,* 406 S.W.2d 580 (Mo.1966); *Garnick v. Miller,* 81 Nev. 372, 403 P.2d 850 (1965); *Commonwealth ex rel. Ensor v. Cummings,* 420 Pa. 23, 215 A.2d 651 (1966); *Ex Parte Elliott,* 746 S.W.2d 762 (Tex.Crim.App.1988); *Monohan v. Burdman,* 84 Wash.2d 922, 530 P.2d 334 (1975).

jority labors under the mistaken belief both that the Legislature can, and that the Legislature in fact intended to, deprive a citizen of the habeas corpus remedy to end an alleged material restraint on one's liberty arising out of the status of being on parole. The majority misses the point that parole imposes material infringements on otherwise constitutionally protected liberty interests.

### 3. Writ of Coram Nobis

The majority failed once again to answer a simple—if somewhat obscure—pleading question that has been left unanswered in our courts since the West Virginia Rules of Civil Procedure became effective nearly fifty years ago: When the writ of coram nobis was abolished in civil cases in 1960,[3] did the writ survive for use in criminal cases? Rather than give a forthright answer to this question, the majority suggested Appellant might have relief from a clear sentencing error by filing "a motion" in a lower court.[4] I see no good reason for this Court to keep sidestepping this question.[5]

To be clear, this dissent has nothing at all to do with letting parolees go free. The heartfelt concern I raise is that the majority is being less than faithful and resolute in living up to the responsibility entrusted to the judiciary by the people of this state for review by habeas corpus where significant impediments to liberty interests are alleged. As long as freedoms may be unlawfully curtailed, the people of this state have said through their constitution that there is a right to seek vindication of those freedoms in the judicial system by means of habeas corpus. Accordingly, I dissent from the majority's refusal to fulfill the sacred obligation entrusted to the courts in this case.

**3.** *See* W.Va. R. Civ. P. 60(b).

**4.** In addition to finding this "solution" unnecessarily circuitous, I also fail to understand under what authority the lower court will act on such a motion since the majority has both dismissed the issue as moot and refused to resolve the question regarding writs of coram nobis.

**5.** The vitality of the writ of coram nobis in the context of post-conviction remedies has been expressly questioned in footnotes of this Court's opinions since 1995. *See State v. Eddie Tosh K.,* 194 W.Va. 354, 363 n. 10, 460 S.E.2d 489, 498 n. 10 (1995); *Kemp v. State,* 203 W.Va. 1, 2 n. 4, 506 S.E.2d 38, 39 n. 4 (1997); *State ex rel. Richey v. Hill,* 216 W.Va. 155, 162 n. 10, 603 S.E.2d 177, 184 n. 10 (2004).