# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Michael V., Petitioner Below,**
**Petitioner**

**vs)  No. 15-0280** (Cabell County 09-D-1203)

**Stephanie S., Respondent Below,**
**Respondent**

**FILED**

**March 7, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael V., by counsel Steven T. Cook, appeals the Circuit Court of Cabell County's March 9, 2015, order affirming the family court's order granting sole custody of the children to Stephanie S. and denying petitioner any contact with them.[1] The guardian ad litem ("guardian") for the children, Arik C. Paraschos, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix.[2] Petitioner filed a reply. On appeal, petitioner alleges that the family court erred in denying his motion to take testimony from the children; failing to honor D.V.'s preference regarding custody; failing to appoint a neutral guardian ad litem; failing to advise petitioner of multiple ex parte petitions prior to ruling on the same; ruling on the ex parte petitions without providing a timely hearing; de facto terminating his parental rights; and denying him contact with his children. Petitioner further alleges that his constitutional rights to parent his children were flagrantly violated; his due process rights were violated by the guardian's failure to timely file a report; and the children's freedom of religion has been violated.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Michael V. and Stephanie S. are the parents of three children; D.V., M.V.-1,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Respondent Stephanie S. made no appearance before this Court.

1

and M.V.-2.[3] In December of 2009, Stephanie S. filed a petition for divorce from petitioner. The family court then entered a final order of divorce in October of 2010. In March of 2014, Stephanie S. filed a petition for contempt and alleged that petitioner was denying her parenting time. The following month, the family court reappointed the guardian ad litem, respondent herein, to represent the children. The family court then entered an agreed order continuing the hearing on Stephanie S.'s petition so that the guardian would have time to file a report.

In June of 2014, the guardian filed his report and set forth the children's wishes. Specifically, the guardian indicated that six-year-old M.V.-2 was happy living with petitioner and enjoyed visiting her mother. Further, eleven-year-old M.V.-1 reported that he would like to visit his mother more often or, alternatively, live with her if his older brother did not also live with her. According to M.V.-2, his older brother D.V. "constantly threaten[ed] to kill him" and they engaged in fights necessitating petitioner's intervention. Finally, thirteen-year-old D.V. reported that he liked visiting with his mother and living with petitioner, but that he would like to spend more time with his mother. On June 5, 2014, the family court held a hearing and ordered that petitioner would remain the primary residential parent, but that both parents would exercise an equal shared parenting plan.

Later in June of 2014, Stephanie S. filed a second renewed petition for contempt against petitioner for non-payment of attorney's fees. A hearing was scheduled for July 17, 2014. Several days later, petitioner filed a domestic violence petition against Stephanie S. On July 8, 2014, the guardian filed a motion for ex parte relief and alleged that petitioner recently denied Stephanie S. her parenting time. The guardian further alleged that petitioner refused to turn over D.V.'s prescription medication and, after allowing Stephanie S. parenting time, demanded the children be returned prior to the expiration of the allotted time. According to the guardian, when Stephanie S. refused to comply, petitioner retaliated by filing the domestic violence petition referenced above. That same day, the family court entered an order granting the guardian's ex parte motion and setting a hearing for July 17, 2014. Additionally, the originally scheduled hearing on petitioner's domestic violence petition was rescheduled for July 17, 2014, so that all the outstanding matters could be addressed simultaneously. On July 15, 2014, petitioner filed a motion for modification.

On July 17, 2014, the family court held a hearing on petitioner's domestic violence petition, the guardian's motion for ex parte relief, and Stephanie S.'s petition for contempt. Petitioner voluntarily dismissed the domestic violence petition. The family court then found petitioner in contempt for denying Stephanie S. parenting time and granted her full custody of the children and all decision-making authority for medical and educations decisions. The family court then set the matter for a further hearing on October 2, 2014. However, on September 5, 2014, Stephanie S. filed an ex parte petition, and the same day the family court entered an emergency ex parte order granting Stephanie S. sole custody of the children. Petitioner was granted visitation every other Saturday and Sunday for day visits only. The family court then set an evidentiary hearing for October 2, 2014.

---

[3]Because two children share the same initials, they will be referred to as M.V.-1 and M.V.-2 throughout this memorandum decision.

On September 10, 2014, the guardian filed a petition for ex parte relief and alleged that the Cabell County Sheriff's Department was investigating petitioner on charges of stalking three girls under the age of eighteen. According to the petition, there was an outstanding personal safety order that could not be served on petitioner because he could not be located. It was alleged the order was to protect one of the underage girls from petitioner. The same day, the family court entered an ex parte order prohibiting petitioner from having any contact with the children until the October of 2014 hearing. That same day, petitioner filed a motion to take testimony from D.V. The guardian thereafter filed objections to petitioner's motion.

Following the October 2, 2014, evidentiary hearing, the family court entered an order granting petitioner supervised visitation with the children on October 13, 2014. The visitations were supervised by Children First. According to the supervisors, petitioner initially did not cooperate in scheduling supervised visitation. Once visitation was established, the supervisor indicated that petitioner immediately began to push the boundaries of acceptable behavior. This included asking the children inappropriate questions and leading the children to make reports about Stephanie S.'s boyfriend. The supervisor also indicated that petitioner refused to schedule a follow up visit with the children when invited to do so.

On December 10, 2014, the guardian filed an additional report. This report again indicated that all three children expressed a desire to live with petitioner, but also noted that the children "liked the freedom that living with [petitioner] provided." Also, contrary to prior reports from M.V.-2 regarding his strained relationship with his older brother, the report noted that the children were getting along better while in Stephanie S.'s care. Ultimately, the report concluded that although the children wished to live with petitioner, this would not be in their best interests.

On December 11, 2015, the matter came on for a final hearing, during which the family court ordered that the children remain in the sole custody of Stephanie S. and that petitioner have no contact with the children. The family court based this decision on the following findings: that D.V. suffered no seizures since full custody was transferred to Stephanie S.; that petitioner engaged in abusive conduct toward Stephanie S. in the children's presence; and that visitation with petitioner had a detrimental impact on the children, especially D.V. who exhibited extreme reactions following visitation. The family court also ordered the guardian to discuss telephone and text message communication between petitioner and the children with the children's counselor to determine what was in the children's best interests. The family court also ruled that testimony from the children was unnecessary and not in their best interests.

In January of 2015, petitioner filed his appeal to the circuit court. In February of 2015, the guardian addressed telephone and text message contact with the children's counselor and reported the discussion to the circuit court and the parties in a letter. According to the letter, the counselor did not see a way to facilitate petitioner's request for such communication without creating issues with the children's wellbeing. That same month, while his appeal was still pending in circuit court, petitioner filed an emergency motion for physical custody of the children, parenting time, and to appoint an independent guardian ad litem for the children. The family court ultimately denied the request for an additional guardian and held the remaining issues in abeyance. In March of 2015, the circuit court entered an order affirming the family court's final order. It is from this order that petitioner appeals.

3

We have previously established the following standard of review:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). Upon our review, we find no error in the proceedings below. To begin, the Court finds no error in regard to petitioner's allegation that his state and federal constitutional rights to parent his children were violated below. In support of this assignment of error, petitioner relies upon our prior holdings, wherein we have stated that

> [i]n the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

Syl. Pt. 1, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973). Moreover, we have held that

> "[a] parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts." Syllabus, *Whiteman v. Robinson*, 145 W.Va. 685, 116 S.E.2d 691 (1960).

Syl. Pt. 7, *In re Antonio R.A.*, 228 W.Va. 380, 719 S.E.2d 850 (2011). According to petitioner, the family court never found him to be unfit and, as such, has violated his right to parent his children. The Court, however, finds no violation of petitioner's constitutional right to parent his children.

The evidence below established that petitioner withheld D.V.'s anti-seizure medication and caused the child to suffer from seizures. Further, there were allegations that petitioner withheld this medicine in an attempt to obtain a disability check for the child. Regardless, the evidence shows that once the child was placed with Stephanie S., he stopped having seizures. The evidence also shows that D.V. and M.V.-2 had a violent relationship when in petitioner's care, with M.V.-2 reporting that D.V. constantly threatened to kill him and that they engaged in physical altercations. Once the brothers were placed with Stephanie S., the evidence established that their relationship improved dramatically. The evidence also demonstrated that when the children lived with petitioner, they had little structure and petitioner had no concern for their hygiene. The children all reported they could bathe if and when they want, brush their teeth only

if they wanted, and go to bed when they chose. As such, the family court was presented with overwhelming evidence that petitioner failed to properly care for the children. We have previously held that "[t]hough constitutionally protected, the right of the natural parent to the custody of minor children is not absolute and it may be limited or terminated by the State, as *Parens patriae*, if the parent is proved unfit to be entrusted with child care." *In re Willis*, 157 W.Va. at 225, 207 S.E.2d at 130, Syl. Pt. 5. More importantly, this Court has routinely held that the children's health and welfare must be the primary goal of custody matters. Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). Because the evidence below established that petitioner provided the children with improper care, and because placement with Stephanie S. was clearly in their best interests, we find no error in this regard.

Next, the Court finds no error in regard to petitioner's allegation that the family court erred in denying his motion to take testimony from the children. Specifically, petitioner alleges that he filed a timely motion to take testimony from the children in excess of twenty days prior to the hearing, but that the family court failed to make a ruling on this motion within five days of the hearing as required by Rule 17 of the West Virginia Rules of Practice and Procedure for Family Court. While it is true that Rule 17(b) requires that "[t]he court shall rule on the motion no later than five days prior to the hearing," we nonetheless find no reversible error in this regard. Ultimately, the family court denied the motion because "testimony from the children was unnecessary and not in the children's best interests in light of all the other evidence[,]" including medical records, school records, and the guardian's representations to the family court after extended interaction with the children. Simply put, petitioner was not prejudiced by the circuit court's ruling.

According to Rule 17(a) of the West Virginia Rules of Practice and Procedure for Family Court, "Rules 8 and 9 of the Rules of Procedure for Child Abuse and Neglect Proceedings shall govern the taking of testimony of children[,]" and Rule 8(a) states that there is a rebuttable presumption that the potential psychological harm to a child in testifying outweighs the necessity of the testimony. In the underlying proceeding, petitioner filed a ten-paragraph motion to take D.V.'s testimony, wherein he alleged in one paragraph that the child was a material witness in regard to the allegations against him. However, this blanket statement, without any support, is not to be sufficient to overcome the presumed psychological harm to the child in testifying. Further, petitioner provided no specific testimony that the child could offer on this issue. The remaining nine paragraphs all alleged that the child should be allowed to testify about his desire to remain with petitioner, to attend a particular church, and to remain in the same school. However, the record is clear that the family court was presented with this evidence through the collateral sources set forth above. For these reasons, we find no error in this regard.

Next, the Court finds no error in regard to petitioner's allegation that the family court failed to honor D.V.'s request to reside in his home. In support, petitioner relies on West Virginia Code § 48-9-206(a)(2), which directs courts to allocate parenting time in such a way as

> [t]o accommodate the firm and reasonable preferences of a child who is fourteen years of age or older, and with regard to a child under fourteen years of age, but sufficiently matured that he or she can intelligently express a voluntary preference for one parent, to give that preference such weight as circumstances warrant.

Accordingly, petitioner argues that D.V.'s preferences should have been honored and that the remaining children's wishes should have been afforded significant weight. The Court notes, however, that D.V. was thirteen years old at the time of the family court's final hearing, contrary to petitioner's assertion that the child was fourteen years old. Further, West Virginia Code § 48-9-209(a) states that

> [i]f either of the parents so requests, or upon receipt of credible information thereof, the court shall determine whether a parent who would otherwise be allocated responsibility under a parenting plan: (1) Has abused, neglected or abandoned a child, as defined by state law; (2) Has sexually assaulted or sexually abused a child as those terms are defined in articles eight-b and eight-d, chapter sixty-one of this code; (3) Has committed domestic violence, as defined in section 27-202; (4) Has interfered persistently with the other parent's access to the child, except in the case of actions taken for the purpose of protecting the safety of the child or the interfering parent or another family member, pending adjudication of the facts underlying that belief; or (5) Has repeatedly made fraudulent reports of domestic violence or child abuse.

West Virginia Code § 48-9-902(b)(1)(C) goes on to state that "[i]f a parent is found to have engaged in any activity specified by subsection (a) of this section, the court shall impose limits that are reasonably calculated to protect the child or child's parent from harm[,]" which includes "[t]he allocation of exclusive custodial responsibility to one of [the parents]." In this matter, the evidence clearly showed that petitioner interfered with Stephanie S.'s access to the children such that she was required to file for contempt in order to exercise her parenting time. As such, the family court had authority to grant exclusive custodial responsibility to Stephanie S., regardless of the children's express wishes. Moreover, the family court specifically concluded that it was not required to follow the children's preferences because they were contrary to their best interests, as established by evidence that petitioner's lack of care threatened the children's wellbeing. Finally, petitioner has provided no evidence to support his allegation that the children are in extreme emotional distress because of being in Stephanie S.'s care. In fact, this allegation is in direct contradiction to evidence from the children's counselor indicating that they are doing well and that contact with petitioner is likely to be detrimental to their wellbeing. For these reasons, we find no error in regard to this assignment of error.

Next, the Court finds no error in regard to petitioner's allegation that the family court erred in failing to appoint a second guardian ad litem for the children. In support of this argument, petitioner alleges that the children's wishes and the guardian's recommendations were so divergent that a conflict of interest existed in the guardian's representation for the children. The Court, however, does not agree. Despite the fact that the guardian recommended that Stephanie S. be the children's sole custodial parent, he, nonetheless, accurately presented the children's wishes concerning living with petitioner to the family court. In both written guardian reports, the guardian clearly set forth the children's expressed preferences to live with petitioner. This is corroborated by the family court's final order, wherein it explicitly found that the guardian set forth the children's preferences. Moreover, Appendix B to the Rules of Practice and Procedure for Family Court states that a guardian has a duty to articulate the expressed

6

preferences of children, as the guardian did in this matter. Additionally, where a potential conflict exists, the guidelines are clear that the guardian has the discretion to request the appointment of counsel for the child if the child's wishes are contrary to the guardian's assessment of the child's best interests. This appendix also provides that the family court has the discretion to appoint separate counsel in such an instance. In this matter, it is clear that the children's wishes were clearly reported. Further, we find no abuse of discretion in the decision to proceed with one guardian ad litem because the facts of this case clearly show that no conflict of interest warranted such action. Moreover, petitioner did not file a motion to appoint counsel for the children until February 23, 2015, well after the final hearing in December of 2014. For these reasons, petitioner is entitled to no relief in this regard.

Next, the Court finds no error in regard to petitioner's argument that his due process rights were violated because of an alleged failure to timely file the guardian's report below. Specifically, petitioner argues that his counsel did not receive the guardian's second report until the night before the December of 2014 final hearing and that this violates the requirement that such reports be filed five days prior to hearings. However, the Court notes that petitioner cites to no authority imposing such a requirement on guardians. As such, we find no error.

Next, the Court finds no error in regard to the issuance of order granting ex parte requests for relief below. Petitioner first argues that the family court erred in failing to advise his counsel of multiple filings against him. However, the Court notes that the family court was not required to provide such notice, pursuant to West Virginia Code § § 48-5-512, which provides that "[a]n ex parte order granting . . . relief . . . may be granted without written or oral notice to the adverse party . . . ." This statute clearly indicates that an adverse party is not entitled to notice of such filings until the required hearing is held on the same. Petitioner further argues that the family court did not comply with West Virginia Code § 48-5-513(b), which requires that after granting ex parte motions without notice, a family court must hold a hearing within twenty days. Petitioner argues that the family court instead waited until the December of 2014 hearing to address several such ex parte orders, well outside the applicable twenty-day timeframe. The Court, however, does not agree.

The record is clear that three ex parte motions and/or petitions were filed prior to the December 11, 2014, final hearing. The first was on July 8, 2014, when the guardian filed a motion for ex parte relief related to the domestic violence protective order petitioner filed against Stephanie S. Specifically, the guardian sought to have physical custody of the children transferred to the maternal grandmother because of the allegations in the domestic violence petition and further that Stephanie S. be allowed to have limited, supervised contact with the children because she lived in the maternal grandmother's home. The family court granted this relief on July 8, 2014, and then held a hearing on July 17, 2014, within the twenty-day timeframe, to resolve these issues.

The second filing at issue was an ex parte petition filed by the mother on September 5, 2014. This petition sought to transfer custody of the children to Stephanie S. and to limit petitioner's visitation with the children, among other issues. The family court granted the petition the same day it was filed and ordered that petitioner would have limited visitation with the children every other weekend. The family court then noticed a hearing for October 2, 2014,

7

seven days outside the twenty-day timeframe. The third filing at issue was a September 10, 2014, motion for ex parte relief by the guardian that alleged petitioner was engaged in criminal conduct that put the children at risk. The family court granted the guardian relief on the same day by ordering that petitioner could have no contact with the children, and the matter was set to be addressed at the October 2, 2014, hearing already scheduled. This was two days outside the twenty-day timeframe.

While we recognize that two of the hearings were conducted shortly after the twenty-day timeframe set forth in West Virginia Code § 48-5-513(b), the Court nonetheless finds no reversible error in this regard. According to West Virginia Code § 48-5-513(b), "[t]he order granting ex parte relief must fix a time for a hearing for temporary relief to be held within a reasonable time, not to exceed twenty days, unless before the time fixed for hearing, the hearing is continued for good cause shown . . . ." In this matter, it is clear that the family court had good cause for continuing the hearings on the ex parte filings from September 5, 2015, and September 10, 2014, because it was able to address all the outstanding issues at the already noticed hearing on October 2, 2014. Further, the record is clear that the family court's rulings on these motions are ultimately moot, given that the family court's final order ultimately placed full custodial responsibility with Stephanie S. and denied petitioner contact with the children. As such, the fact that the family court earlier took steps in limiting petitioner's parenting allocation is irrelevant. "'Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court.' Syl. pt. 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908)." Syl. Pt. 1, *State ex rel. McCabe v. Seifert*, 220 W.Va. 79, 640 S.E.2d 142 (2006). For these reasons, we find no reversible error in this regard.

Next, the Court finds no error in regard to petitioner's allegation that the children's right to the free exercise of religion has been violated. In support of this assignment of error, petitioner argues that early orders reflected that the mother was required to honor the children's membership in the Mormon Church by allowing them to attend. However, petitioner alleges that now that the children are in the mother's custody, they have not attended church, despite their significant roles therein. The Court, however, does not agree. First, petitioner fails to articulate any restraint placed upon the parents' religious practices and, thereby, upon the children, by the family court. Second, this Court has held that the due process clauses of the West Virginia and United States Constitutions protect the fundamental rights of parents to make decisions concerning the custody, care, and control of their children. Syl. Pt. 3, *Lindsie D.L. v. Richard W.S.*, 214 W.Va. 750, 591 S.E.2d 308 (2003). Accordingly, it is clear that Stephanie S. is the parent tasked with such decisions, as the family court allocated sole custodial responsibility to her and found limiting factors precluded it from allocating any decision-making authority to petitioner. Further, petitioner has provided no evidence, other than his own assertions, that the children are not attending church. For these reasons, we find no error in this regard.

Next, the Court finds no error in regard to petitioner's assertion that the family court erred in ordering a de facto termination of his parental rights. According to petitioner, the alleged "medical neglect" was insufficient to warrant any change in parenting time given that it only occurred on two occasions over a three-year period, and petitioner fully acknowledged that he should have ensured the child took the medicine he provided. Further, petitioner argues that if

8

evidence of medical neglect was produced, then the family court had a duty to report the neglect to the DHHR and the circuit court so that an abuse and neglect petition could be filed. Pursuant to Rule 48 of the West Virginia Rules of Practice and Procedure for Family Court,

> [i]f a family court has reasonable cause to suspect any minor child involved in family court proceedings has been abused or neglected, that family court shall immediately report the suspected abuse or neglect to the state child protective services agency, pursuant to W. Va. Code §§ 49-6A-2, and the circuit court.

While it is true that the final order on appeal to the circuit court indicated that the guardian believed petitioner engaged in medical neglect, the record indicates that the family court made its final determination that petitioner have no contact with the children based upon "the extreme reaction after visitation on the part of [D.V.]" and the fact that it "is a threat to his and his siblings['] well-being . . . ." As such, it is clear that the family court made this decision in accordance with the best interests of the children, per this Court's prior direction. *See In re Katie S.*, 198 W.Va. at 81, 479 S.E.2d at 591, Syl. Pt. 3. Further, the family court's lack of referral to the DHHR and circuit court indicates that it did not believe that the allegations against petitioner rose to the level of neglect such that an abuse and neglect petition was warranted. Further, the Court notes that the family court's ruling does not constitute a de facto termination of his parental rights, as alleged. Petitioner herein still retains the ability to petition the family court for a modification of his parenting allocation if the circumstances warrant, while a parent whose parental rights have been terminated lacks such standing. *See* Syl. Pt. 6, *In re Cesar L.*, 221 W.Va. 249, 654 S.E.2d 373 (2007). As such, we find no error in this regard.

Finally, the Court finds no error in regard to petitioner's assertion that the family court erred in denying him any contact with his children. Specifically, petitioner argues that it was an abuse of discretion for the family court to transfer custody to the mother, who previously abandoned the children, and that there has been no conduct that warrants a total barring of petitioner having contact with the children. However, the Court notes that, as addressed above, this custodial allocation was made consistent with the children's best interests. The family court was presented with evidence that while in petitioner's care, D.V. suffered from several seizures despite petitioner possessing the medication to treat the same. Later testing revealed that the child did not have the medication in his system on several occasions while in petitioner's care. In contrast, the family court found that the child "had not suffered any seizures since full custody was transferred to the mother . . . ."

The evidence also established that petitioner refused to comply with the family court's allocation of parenting time and that he filed a baseless domestic violence petition against Stephanie S. when she refused to submit to his demands to give the children back to him during her parenting time. Moreover, since living with Stephanie S., brothers D.V. and M.V.-2 are getting along well and M.V.-2 no longer reports any fear that D.V. will hurt him. Most importantly, however, between October of 2014 and December of 2014, petitioner was ordered to have supervised visitation with the children. Evidence established that the supervisor reported that petitioner was initially uncooperative in scheduling visits and that he then "pushed the boundaries" during his visitation. According to the supervisor, petitioner made inappropriate comments to D.V. that led the children to make reports about the mother's boyfriend. Petitioner

also refused to schedule a follow-up visit with the children. Simply put, the evidence established that contact between petitioner and the children is detrimental to their well-being at this time. For these reasons, we find no error in the circuit court's order denying petitioner contact with the children.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED: March 7, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II